**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

MULTI-HOUSING TAX )
CREDIT PARTNERS XXX, )
330 Victoria Street )
Gardena, CA  90248 )
)
              Plaintiff, )
)   Case No. _3:20cv00612_____
v. )
)
ALEXANDER DAIRY )
ASSOCIATES, LLC, )
9211 Quioccasin Road )
Richmond, VA  23229 )
)
              Defendant. )
_____)

## COMPLAINT

Plaintiff Multi-Housing Tax Credit Partners XXX ("Multi-Housing Partners", "Plaintiff",

or "Limited Partner"), by and through undersigned counsel, alleges as follows for its Complaint

against Defendant Alexander Dairy Associates, LLC ("Defendant" or "General Partner"):

## INTRODUCTION

1.     This case arises out of Defendant's ultra vires and invalid attempts to unilaterally

transfer to itself the limited partnership interests of Plaintiff Multi-Housing Partners in the low-

income housing tax credit partnership that developed, owns, and manages a multi-family housing

property commonly known as "Richmond Dairy" in Richmond, Virginia.  Defendant is the General

Partner in the Partnership; Plaintiff is the Limited Partner.

2.     Defendant has purported to consummate an option to purchase the partnership

interests of Multi-Housing Partners based on an unauthorized and unapproved outlier appraisal

completed at the Defendant's direction without the required consent or approval of the Limited Partner.

3.      The appraisal process outlined in the limited partnership agreement requires that the appraisal be completed by an MAI-designated appraiser—i.e. that it be an appraisal of the real property, which is then separately to be used to determine the value of the parties' partnership interests—and that it be mutually agreed upon by the partners.

4.      Nonetheless, over time, Defendant orchestrated a scheme to arrive at an appraised value for the property—and ultimately for the limited partner interests in the partnership—that effectively constitutes an equity strip of the Limited Partner, depriving Multi-Housing Partners of the significant value associated with the property and its limited partnership interests. Defendant did so in multiple steps.

5.      Defendant initially sought Plaintiff's approval to engage Edward G. Knight of Knight, Dorin & Rountrey ("Knight") to perform the appraisal required under the limited partnership agreement. Defendant acknowledged at the time that Defendant had an obligation under the limited partnership agreement to secure the Limited Partner's approval for that appraisal.

6.      More than 10 years earlier in 2009—at the height of the recession caused by the 2008 financial crisis—Defendant had obtained an appraisal from Knight for Defendant's own purposes that valued the property at $4,015,000.

7.      Defendant provided Plaintiff with a proposed engagement letter from Knight that indicated Knight would appraise the market value of the improved real property using the income restrictions set forth in the partnership agreement, and that Knight would not perform a fractional-interest valuation—i.e., Knight would appraise the Limited Partnership's full fee interest in the property,  and then the value of the Limited Partner's interest would be ascertained based on that

valuation in accordance with the partner distribution provisions of the limited partnership agreement. Multi-Housing Partners informed Defendant that the scope of work, special conditions, and definition of value listed in Knight's engagement letter were acceptable to be used by the appraiser that ultimately was selected and agreed to by Multi-Housing Partners, but that Knight was not an acceptable appraiser because it did not have at least 10 years of experience appraising low-income housing projects, as required by the limited partnership agreement.

8.      Defendant then engaged Novogradac to perform the required appraisal. However, when Novogradac confirmed it would appraise the property in the same manner that Knight had proposed, i.e., using the income restrictions set forth in the limited partnership agreement and without a fractional-interest valuation, Defendant unilaterally decided to forego the Novogradac appraisal and decided instead to engage CohnReznick to perform the appraisal.

9.      Then, when Multi-Housing Partners would not agree to CohnReznick's appraisal methodology, which was inconsistent with the terms of the limited partnership agreement, Defendant unilaterally decided to move forward anyway with the unauthorized and unapproved CohnReznick appraisal.

10.      Among other deficiencies, the improper and unapproved CohnReznick appraisal valued the property at just $4.8 million—several million dollars less than its true fair market value. In fact, just a few months before, in the fall of 2019, Defendant had obtained a valuation from a national brokerage firm specializing in affordable housing that valued the property at between $8.2 and $9 million. Additionally, an appraisal completed by Novogradac in April 2020 (at Plaintiff's request) valued the property at $7.6 million. Defendant nonetheless used the outlier value of $4.8 million and an appraisal methodology that does not conform to the requirements of the purchase option to arrive at an artificially low purchase price for the Limited Partner's interests. Indeed, the

$4.8 million valuation is only slightly higher than the property's valuation under the appraisal conducted by Knight more than 10 years earlier in 2009 at the height of the recession.

11.     Defendant now has unlawfully attempted to unilaterally close on the purchase of Plaintiff's partnership interests without Plaintiff's consent, presumably to market and sell the property at its true market value, thereby allowing the General Partner to reap windfall gains at the expense of the Limited Partner.

12.     In the course of doing so, Defendant evidently has made false and misleading statements to the Virginia Housing Development Authority ("VHDA") and others regarding the status of its ownership of the limited partners' interests in the partnership in an unlawful attempt to obtain VHDA's approval.

13.     Multi-Housing Partners brings this action to enforce the consent rights of Multi-Housing Partners under the limited partnership agreement with respect to the appraisal, to invalidate Defendant's attempts to convert the partnership interests of Multi-Housing Partners, to confirm that Defendant has not complied with the terms of the option to purchase the partnership interests of Multi-Housing Partners, and to enjoin Defendant from any and all unilateral actions that require the consent of Multi-Housing Partners under the partnership agreement and Virginia law.

## PARTIES

14.     Nonparty Richmond Dairy Associates, L.P. (the "Limited Partnership") is a limited partnership organized under the laws of Virginia. The Limited Partnership was organized for the purpose of developing, owning, and managing a 113-unit apartment complex in Richmond, Virginia (the "Apartment Complex") in accordance with the federal Low Income Housing Tax

Credit ("LIHTC") program established under Section 42 of the Internal Revenue Code (26 U.S.C. § 42) and regulations promulgated thereunder.

15.    Plaintiff Multi-Housing Partners is a limited partnership organized under the laws of California with its principal place of business in California. It is a limited partner in the Limited Partnership. Multi-Housing Partners owns 99.99 percent of the partnership interests in the Limited Partnership and is entitled to all rights, duties, and obligations of the "Limited Partner" set forth in the Limited Partnership Agreement and under applicable law.

16.    Defendant is a limited liability company organized under the laws of Virginia. It is the general partner of the Limited Partnership. Defendant owns 0.005 percent of the partnership interests in the Limited Partnership.

17.    Nonparty Virginia Richmond Dairy Associates, L.P. ("VRDA") is a limited partnership organized under the laws of Virginia. VRDA is a limited partner in the Limited Partnership and owns the remaining 0.005 percent of the partnership interests in the Limited Partnership. VRDA is the "Investor Limited Partner" as set forth in the Partnership Agreement.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff and Defendant. Multi-Housing Partners is a limited partnership organized under the laws of California with its principal place of business in California. No partner in Multi-Housing Partners is a citizen of Virginia. The General Partner is a limited liability company organized under the laws of Virginia with its principal place of business in Virginia. Upon information and belief, all of the General Partner's members are citizens of Virginia.

19.     This Court has personal jurisdiction over Defendant because Defendant is a resident and citizen of Virginia.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## FACTUAL ALLEGATIONS

### *The Limited Partnership*

21.     The Limited Partnership was formed to develop, own, and manage the Apartment Complex, which provides housing to qualified individuals and families under the LIHTC program.

22.     In connection with the formation of the Limited Partnership, Defendant entered into a limited partnership agreement with nonparty Alex Alexander, the original limited partner in the Limited Partnership.

23.     On April 5, 1999, Mr. Alexander withdrew from the Limited Partnership. Concurrently, Multi-Housing Investments, Inc. ("Multi-Housing Investments") was admitted to the Limited Partnership as the sole Limited Partner.

24.     Defendant and Multi-Housing Investments entered into an Amended and Restated Agreement of Limited Partnership of Richmond Dairy Associates, L.P., dated April 5, 1999. That agreement and its subsequent amendments (collectively the "Limited Partnership Agreement") is the operative agreement that governs the parties' rights, obligations, and interests in the Limited Partnership. A true and accurate copy of the Limited Partnership Agreement is attached hereto as **Exhibit 1**.

25.     Between July 22, 1999, and August 15, 2002, various entities succeeded Multi-Housing Investments as the "Limited Partner" in the Limited Partnership. On August 15, 2002,

Multi-Housing Partners became the ultimate successor to all rights, power, and authority of the "Limited Partner" set forth in the Limited Partnership Agreement. *See id.* (5th Amendment).

26.     On November 14, 2001, VRDA was admitted as the "Investor Limited Partner" in the Limited Partnership. *See* Ex. 1 (3rd Amendment).

### *The Purchase Option*

27.     Section 16.1 of the Limited Partnership Agreement provides that the General Partner shall have a three-year option to purchase the Limited Partner's partnership interests in the Limited Partnership under specified terms and conditions (the "Purchase Option").

28.     The Limited Partnership Agreement provides that if the General Partner elects to exercise the Purchase Option, "it shall do so by delivering written notice of its election to do so to the Limited Partner within said three-year period." Ex. 1 § 16.1(B)

29.     The Limited Partnership Agreement provides that the Purchase Option may be exercised only if the General Partner "is not then in default under the terms of [the Limited Partnership Agreement]." *Id.* § 16.1.

30.     The Purchase Option was to commence upon the expiration of the 15-year "Compliance Period" under the LIHTC program, as that term is defined in 26 U.S.C. § 42(i)(1). *See id.* § 16.1(A); *id.* Art. I (defining "Compliance Period"). The Compliance Period expired on December 31, 2016.

31.     The Limited Partnership Agreement provides that the purchase price of the Limited Partner's interests under the Purchase Option shall be "determined by appraisal conducted by a member of the Appraisal Institute with [not] less than ten years experience appraising low income housing projects and agreed upon by the Partners . . .." *Id.* § 16.1(C)(i).

32.     The Limited Partnership Agreement provides that the closing of the sale of the Limited Partner's interests in the Partnership shall occur within 130 days after the General Partner gives notice of its intent to exercise the Purchase Option and shall be effective only upon, among other conditions, delivery by the Limited Partner to the General Partner of "an assignment duly executed by the Limited Partner assigning all of its right, title and interest in the Partnership to the General Partner's designee . . .." *Id.* § 16.1(E).

### *Restrictions on the General Partner's Authority*

33.     Section 7.7 of the Limited Partnership Agreement places numerous restrictions on the General Partner's authority to act on behalf of the Limited Partnership.

34.     Among other restrictions, Section 7.7(A) provides that the "General Partner shall not have any authority . . . to take any action which under the [Virginia Revised Uniform Limited Partnership Act] or this Agreement requires the approval, ratification or consent of some or all of the Partners without first obtaining such approval, ratification or consent, as the case may be."

35.     Section 7.7(B) sets forth 14 specific actions the General Partner is prohibited from taking without the prior written consent of the Limited Partner. Thus, the General Partner may not:

- "Do any act in contravention of this Agreement . . .." § 7.7(B)(1).

- "Possess any property of the Partnership or assign the rights of the partnership in the same for other than a business purpose of the Partnership . . .." § 7.7(B)(5).

- "Obtain, prepay, modify or refinance any Loans." § 7.7(B)(6).

- "Mortgage, pledge, assign, sell, transfer, lease or otherwise dispose of all or any portion of the Project . . .." § 7.7(B)(8).

***Defendant's Notice of Intent to Exercise the Purchase Option
and Subsequent Unauthorized Appraisal***

36.     In September 2019 Defendant commissioned a broker opinion of value ("BOV") to be prepared by the national real estate firm CBRE.

37.     On or about October 17, 2019, Defendant received CBRE's BOV, which showed a valuation of between $8.2 and $9 million for the Apartment Complex.

38.     Some three weeks later, by letter dated November 5, 2019, Defendant notified Multi-Housing Partners of its intent to exercise the Purchase Option.

39.     On or about November 8, 2019, Defendant proposed that an appraisal be conducted by Knight pursuant to Section 16.1 of the Limited Partnership Agreement. Defendant's November 8, 2019 letter disclosed that Knight had previously appraised the Apartment Complex.

40.     On or about November 11, 2019, Multi-Housing Partners requested a copy of Knight's proposed engagement letter, documentation evidencing Knight's experience appraising low-income housing tax credit properties such as the Apartment Complex, and a copy of the appraisal Knight had previously completed.

41.     On November 21, 2019, Defendant provided Knight's proposed engagement letter and curriculum vitae to Multi-Housing Partners by email, along with a copy of Knight's 2009 appraisal of the Apartment Complex. Consistent with the requirements of the Limited Partnership Agreement, the scope of Knight's proposed engagement was limited to an appraisal of the market value of the Apartment Complex as defined by Chapter 12, Part 34 of the Code of Federal Regulations, which governs appraisals of real property. The proposed engagement letter further specified that the appraisal of the Apartment Complex was "[t]o be used by the client as part of the requirements for the purchase of a limited partner interest."

42.     Defendant's November 21, 2019 email acknowledged that Defendant understood and agreed that the appraiser of the real property was not to conduct a fractional-interest valuation—i.e., it would appraise only the Limited Partnership's full fee interest in the Apartment Complex and would not also allocate equity shares in the property among the partners of the Limited Partnership or otherwise value the limited partnership interests. Defendant acknowledged and agreed that the "equity division portion of the appraisal/partnership," i.e., the valuation of the Limited Partner's interests, was to be conducted separately and distinctly under the terms of the Limited Partnership Agreement once a reasonable valuation for the Apartment Complex was obtained.

43.     The previous appraisal of the Apartment Complex completed for Defendant by Knight in 2009 had shown an appraised value of $4,015,000. That appraised value was arrived at in the immediate aftermath of the 2008 financial crisis, when real property values were significantly depressed.

44.     On December 26, 2019, Defendant again acknowledged and agreed by email that the valuation of the Limited Partner's interests was to be conducted separately and distinctly from the appraisal under the terms of the Limited Partnership Agreement once a reasonable valuation for the Apartment Complex was obtained.

45.     Also in December 2019, Multi-Housing Partners sent a distribution schedule to the General Partner that indicated how the valuation of the both the Limited Partner's and General Partner's interests would be calculated in accordance with Section 11.2(B) of the Limited Partnership Agreement—which sets forth the manner of distributing proceeds upon the sale or refinancing of the Apartment Complex—using a hypothetical appraised value for the Apartment Complex. At no prior time did Defendant object to Plaintiff's methodology for calculating the value of the Limited Partner's and General Partner's interests in accordance with Section 11.2(B) of the Limited

10

Partnership Agreement or contend that the value of the Limited Partner's interests should be determined in another fashion.

46.     On or about December 26, 2019, Multi-Housing Partners informed Defendant that because Knight did not demonstrate 10 years of experience valuing LIHTC properties as required by the Limited Partnership Agreement, Multi-Housing Partners could not approve Knight as the appraiser. However, Multi-Housing Partners informed Defendant that the "scope of work, special conditions, and definition of value listed in Knight's agreement" were acceptable to Multi-Housing Partners.

47.     Notably, the methodology of Knight's proposed appraisal did not include a fractional-interest valuation, which was consistent with the terms of the Limited Partnership Agreement and with the intent of the parties thereto, as Defendant had previously acknowledged on at least two occasions.

48.     Multi-Housing Partners suggested that Defendant seek out an MAI-designated appraiser (as required under the Limited Partnership Agreement) from one of three national firms with experience valuing properties such as the Apartment Complex—CBRE, CohnReznick, and Novogradac—to conduct an appraisal consistent with the partnership agreement and as set forth in the scope of work in Knight's proposed engagement letter, i.e., one that did not include a fractional-interest valuation.

49.     On or about January 7, 2020, Defendant purported to unilaterally engage Novogradac to perform the appraisal required under Section 16.1 of the Limited Partnership Agreement. On or about the same day, Multi-Housing Partners informed Novogradac that Defendant and Multi-Housing Partners had agreed that the scope of work for the appraisal was the scope set forth in Knight's proposed engagement letter.

50.     Rather than proceed with Novogradac, however, on or about January 20, 2020, Defendant unilaterally purported to engage Donald Nimey and Patricia M. McGarr of CohnReznick to perform the appraisal required by Section 16.1 of the Limited Partnership Agreement. However, the scope of work proposed by CohnReznick included an appraisal of the Limited Partner's interests in the Limited Partnership (i.e. it included a fractional-interest valuation), rather than an appraisal solely of the Apartment Complex, thus exceeding the scope authorized by the Limited Partnership Agreement and the scope to which Multi-Housing Partners had previously agreed. Additionally, contrary to the requirement under the Limited Partnership Agreement that the appraisal be conducted by a single MAI-designated appraiser, thus resulting in an appraisal solely of the improved real property, CohnReznick's engagement letter dated January 20, 2020 provided for an appraisal conducted by two appraisers, one of whom—Mr. Nimey—was not an MAI-designated appraiser and would be engaged to complete an appraisal of assets and/or interests other than the Apartment Complex itself.

51.     By letter dated January 28, 2020, Multi-Housing Partners informed Defendant that it would not agree to the proposed engagement of Mr. Nimey and Ms. McGarr because it was not consistent with the requirements of the Limited Partnership Agreement. Multi-Housing Partners further informed Defendant that it would agree to an appraisal of the Apartment Complex (but not of the Limited Partnership interests or fractional equity shares in the Apartment Complex) conducted by Andrew Lines, an MAI-designated appraiser also with CohnReznick.

52.     By letter dated January 31, 2020, Defendant provided Multi-Housing Partners with a purported "revised engagement letter" from CohnReznick dated January 29, 2020. The revised engagement letter was materially the same as the previous engagement letter dated January 20, 2020, other than the substitution of Mr. Lines for Mr. Nimey. The scope of work in the revised engagement

letter still included an appraisal of the Limited Partner's interest in the Limited Partnership, rather than of the Apartment Complex, thus exceeding the scope authorized by the Limited Partnership Agreement and the scope to which Multi-Housing Partners had previously agreed. The revised engagement letter also still provided for the appraisal to be conducted by two appraisers, contrary to the requirement under the Limited Partnership Agreement that the appraisal be conducted by a single MAI-designated appraiser devoted solely to appraising the improved real property.

53.     By letter dated February 6, 2020, Multi-Housing Partners informed Defendant that it would not agree to the proposed revised engagement of CohnReznick because it was not consistent with the requirements of the Limited Partnership Agreement. Multi-Housing Partners again informed Defendant that it would agree to an appraisal of the Apartment Complex conducted by Mr. Lines consistent with the scope of work set forth in Knight's proposed engagement letter, (i.e. one that did not include a fractional-interest valuation).

54.     By letter dated February 12, 2020, Defendant informed Multi-Housing Partners that it intended to unilaterally engage CohnReznick under the terms of the January 29, 2020 engagement letter.

55.     By letter dated February 19, 2020, Multi-Housing Partners reiterated its objections to and refusal to authorize the appraisal proposed in CohnReznick's January 29, 2020 engagement letter.

56.     Despite the lack of any authorization from Multi-Housing Partners, CohnReznick provided Defendant with an appraisal report dated February 28, 2020, and an amendment thereto dated March 6, 2020 (collectively the "Unauthorized Appraisal"), that purported to value both the Apartment Complex and the limited partnership interests of Multi-Housing Partners in the Limited Partnership. The Unauthorized Appraisal and the conduct of Defendant in obtaining it violated the

terms of the Limited Partnership Agreement in several material respects, including but not necessarily limited to the following: (a) it included an appraisal and valuation of the Limited Partner's interests in the Limited Partnership, rather than simply of the Apartment Complex, notwithstanding that the valuation of the limited partnership interests was to be completed separately and distinctly in accordance with the Limited Partnership Agreement; (b) it included a fractional-interest valuation that was unapproved, contrary to the Limited Partnership Agreement, and unacceptable; (c) it improperly valued the limited partnership interests using a discounted cash flow method, rather than the distribution method required under Section 11.2(B) of the Limited Partnership Agreement; and (d) it was conducted by multiple appraisers, including Mr. Nimey and other non-MAI-designated appraisers, rather than by a single MAI-designated appraiser who, by definition, would have completed an appraisal solely of the improved real property.

57.     Additionally, the Unauthorized Appraisal used a flawed methodology that deflated the appraised value of the Apartment Complex itself which, in turn, caused an artificially low purported valuation of the Limited Partners' interests in the Limited Partnership.

58.     The Unauthorized Appraisal concluded an unreasonably low valuation of $4.8 million for the Apartment Complex, which was inconsistent with its true fair market value. In fact, the CohnReznick valuation was only marginally higher than the 2009 Knight appraisal value, which was arrived at more than 10 years earlier at the height of the recession.

59.     The Unauthorized Appraisal also concluded an unreasonably low valuation of $675,000 for the Limited Partner's interests. Under the distribution method set forth in Section 11.2(B) of the Limited Partnership Agreement, a valuation of the Apartment Complex of $4.8 million (which itself is unreasonably low in any event) would result in a payment to Multi-Housing Partners of about $1.6 million.

14

60.     Multi-Housing Partners never agreed upon, ratified, or otherwise authorized the Unauthorized Appraisal.

61.     An independent appraisal of the Apartment Complex completed by Novogradac in April 2020 resulted in an appraised value of $7.6 million—more than 50% higher than the amount set forth in the Unauthorized Appraisal.

62.     Upon information and belief, and based at least in part on the BOV conducted by CBRE in the fall of 2019, the Apartment Complex would sell for nearly $9 million in the current market—nearly double the amount set forth in the Unauthorized Appraisal. A sale of the Apartment Complex at its fair market value after the Defendant acquired the Limited Partner' interests at an artificially depressed price would provide a windfall to Defendant to which it is not entitled.

*63.*     For example, under the distribution method set forth in the Limited Partnership Agreement, a sale of the Apartment Complex for $7.6 million (the valuation set forth in Novogradac's appraisal) would result in a distribution to Multi-Housing Partners of about $3.1 million and a distribution to Defendant of about $1.3 million. A sale for $8.2 million (the low end of CBRE's valuation range) would result in a distribution to Multi-Housing Partners of about $3.2 million and a distribution to Defendant of about $1.8 million. A sale of the Apartment Complex for $9 million (the high end of CBRE's valuation range) would result in a distribution to Multi-Housing Partners of about $3.3 million and a distribution to Defendant of about $2.5 million.   Thus, if Defendant were able to purchase Multi-Housing Partner's interests for $675,000 (the purported value of the interests set forth in the Unauthorized Appraisal), and even if the Apartment Complex could only be sold for $7.6 million (the lowest of the other recent valuations of the Apartment Complex), Defendant would reap a windfall of more than $2.4 million.

*Defendant's Attempt to Unilaterally Close on the Purchase*
*in Violation of the Limited Partnership Agreement*

64.     On the basis of the Unauthorized Appraisal, Defendant informed Multi-Housing Partners by letter dated March 5, 2020, that it was "prepared to close" on the "sale of the Limited Partner's Interest" in the Limited Partnership on March 16, 2020, for the purchase price of $675,000. In the same letter, Defendant acknowledged that the closing was conditioned on the occurrence of certain events under the Section 16.1(E) of the Limited Partnership Agreement, including the delivery of "an assignment duly executed by the Limited Partner assigning all of its right, title and interest in the Partnership to the General Partner's designee . . .."

65.     By letter dated March 11, 2020, Multi-Housing Partners informed Defendant that it did not agree to close on a sale of its limited partnership interests on March 16, 2020 based on the improper valuation set forth in the Unauthorized Appraisal. Multi-Housing Partners objected that Defendant's attempt to close on any such sale was not authorized under the Limited Partnership Agreement and thus was ultra vires and otherwise inappropriate.

66.     By letter dated March 12, 2020, Defendant informed Multi-Housing Partners that if Multi-Housing Partners did not close on the sale of its limited partnership interests on March 16, 2020, then Defendant would "forward the applicable check to [Multi-Housing Partners' counsel's] attention and treat the transaction as fully closed."

67.     By letter dated March 13, 2020, Multi-Housing Partners again reiterated that it did not agree to a sale of its interests based on the Unauthorized Appraisal and would refuse delivery of any attempted payment of the purported purchase price. Multi-Housing Partners further cautioned Defendant that any effort to "treat the transaction as fully closed" without the authorization of Multi-Housing Partners would constitute a breach of the Limited Partnership Agreement, a breach of the

General Partner's fiduciary duties to the Limited Partner, and an attempt at conversion of the Limited Partner's property.

68.     On March 16, 2020, an authorized representative of the General Partner traveled to the offices of Multi-Housing Partners in Gardena, California, and attempted to force Multi-Housing Partners to close on a sale of its limited partnership interests despite Plaintiff's repeated admonitions that it did not authorize such a sale.

69.     On March 18, 2020, Defendant attempted to deliver to Multi-Housing Partners' counsel a package containing a cover letter, a cashier's check payable to Multi-Housing Partners in the amount of $675,000, and documents purporting to unilaterally transfer the interests of Multi-Housing Partners in the Limited Partnership to Defendant. As represented in its letter of March 13, 2020, Multi-Housing Partners' counsel refused delivery of the package.

70.     By email dated March 23, 2020, Defendant provided Multi-Housing Partners' counsel with .PDF images of the documents it had attempted to deliver on March 18, 2020. The documents purporting to unilaterally transfer the limited partnership interests of Multi-Housing Partners to Defendant—one styled "Assignment of Limited Partner Interest and Seventh Amendment to Amended and Restated Agreement of Limited Partnership of Richmond Dairy Associates, L.P., a Virginia Limited Partnership" and another styled "Post-Transfer Indemnification Agreement"—were not executed by Multi-Housing Partners and were insufficient as a matter of law to transfer any interests of the Limited Partner to Defendant.

71.     Despite having no authorization from the Limited Partner to complete the sale, and despite failing to satisfy required conditions of closing under the Limited Partnership Agreement, Defendant wrongly stated in its letter dated March 18, 2020, that it had "fully met the requirements for the General Partner's purchase option as contained in the Partnership Agreement." The letter

further stated, without legal or factual basis, that Defendant "considers the [Limited Partner] to be fully redeemed of its Limited Partnership interest and considers the transaction *closed*." Defendant threatened Multi-Housing Partners, also without legal or factual basis, that it "should no longer hold itself out as having any interest in or affiliation with the Partnership or [the Apartment Complex] . . .."

72.     By letter dated March 25, 2020, Multi-Housing Partners reiterated that it did not accept Defendant's attempted tender of the purported purchase price and did not agree to the documents purporting to unilaterally transfer the limited partnership interests of Multi-Housing Partners to Defendant. Multi-Housing Partners further demanded that Defendant immediately cease and desist all unilateral actions that require the consent of the Limited Partner under the Limited Partnership Agreement or the Virginia Revised Uniform Limited Partnership Act, including but not limited to holding itself out as the owner of the Limited Partner's interests in the Limited Partnership.

73.     By email dated April 9, 2020, Multi-Housing Partners received a letter from VHDA, which administers the LIHTC program in the Commonwealth of Virginia, requesting the agreement of Multi-Housing Partners to certain conditions that were to be satisfied before VHDA would approve the purported transfer of an unspecified "membership interest" in the Limited Partnership "as described in the Loan Transfer Information Sheet and email (with attachments) dated March 9, 2020 . . .."

74.     Multi-Housing Partners had no knowledge of, nor did it approve, the transmission of any Loan Transfer Information Sheet or email dated March 9, 2020 to VHDA. Upon information and belief, on or about March 9, 2020, Defendant unilaterally transmitted documents to VHDA requesting VHDA's approval of the unauthorized and ultra vires transfer to Defendant of the Limited Partner's interests in the Limited Partnership. Defendant did so without the knowledge or

authorization of Multi-Housing Partners and in violation of Defendants' fiduciary duties to Multi-Housing Partners.

75.     Allowing Defendant to acquire the Limited Partner's interests for the purchase price Defendant has proposed ($675,000) would allow Defendant to realize a windfall at the expense of its Limited Partner, contrary to Defendant's contractual and fiduciary duties.

**COUNT I**
**(Breach of Contract – Unauthorized Valuation of Partnership Interests)**

76.     Multi-Housing Partners incorporates all allegations in the foregoing paragraphs as if set forth fully herein.

77.     The Limited Partnership Agreement constitutes a valid and enforceable written contract between Multi-Housing Partners and Defendant.

78.     Multi-Housing Partners has performed all of its obligations under the Limited Partnership Agreement.

79.     Under the Limited Partnership Agreement, Defendant must obtain the agreement of Multi-Housing Partners to any appraisal to be used for the purpose of valuing the Apartment Complex and ultimately by the partners in connection with their valuation of the Limited Partner's interests in the Limited Partnership. Defendant did not obtain the agreement of Multi-Housing Partners to the appraisal by CohnReznick that was used by Defendant. Defendant's failure to obtain the agreement of Multi-Housing Partners was and is a material breach of the Limited Partnership Agreement.

80.     Under the Limited Partnership Agreement, the permitted scope of the appraisal to be used for the purpose of valuing the Limited Partner's interests under the Purchase Option is limited to "an appraisal conducted by a member of the Appraisal Institute with not less than ten years' experience appraising low income housing projects," i.e,, an appraisal of the Apartment

Complex. The Unauthorized Appraisal that was used by Defendant for the purpose of valuing the Limited Partner's interests exceeded the scope permitted under the Limited Partnership Agreement. Defendant's use of that appraisal was and is a material breach of the Limited Partnership Agreement.

81.     Under the Limited Partnership Agreement, the appraisal to be used for the purpose of valuing the Limited Partner's interests under the Purchase Option is to be conducted by a single MAI-designated appraiser. The Unauthorized Appraisal was conducted by multiple appraisers, including those without an MAI designation. Defendant's use of that appraisal was and is a material breach of the Limited Partnership Agreement.

82.     Under the Limited Partnership Agreement, the Limited Partner's interest is to be valued based on the value of the Apartment Complex set forth in the appraisal and using the distribution method set forth in Section 11.2(B) of the Limited Partnership Agreement. Even if the Unauthorized Appraisal were permitted to include a fractional-interest valuation (which it is not), the Unauthorized Appraisal did not value the Limited Partner's interests using the distribution method set forth in Section 11.2(B). Defendant's use of that appraisal was and is a material breach of the Limited Partnership Agreement.

83.     Multi-Housing Partners has suffered and continues to suffer damages as a result of Defendant's breach, including but not limited to the undervaluation of its interests in the Limited Partnership as a result of the unauthorized and methodologically flawed appraisal obtained by Defendant.

84.     The amount of Plaintiff's damages will be proven at trial but is believed to exceed $3.3 million.

## COUNT II
### (Breach of Contract – Violation of Conditions of Closing)

85.     Multi-Housing Partners incorporates all allegations in the foregoing paragraphs as if set forth fully herein.

86.     The Limited Partnership Agreement provides that the closing on the sale of the Limited Partner's interests in the Limited Partnership is effective only upon, among other requirements, delivery by the Limited Partner to the General Partner of "an assignment duly executed by the Limited Partner assigning all of its right, title and interest in the Partnership to the General Partner's designee . . .." Ex. 1 § 16.1(E).

87.     The Limited Partnership Agreement also provides that the Purchase Option may be exercised only if the General Partner "is not then in default under the terms of [the Partnership Agreement]." *Id.* § 16.1.

88.     Defendant purported to close on the purchase of the Limited Partner's interests without obtaining "an assignment duly executed by the Limited Partner assigning all of its right, title and interest in the Partnership to the General Partner's designee." Defendant's attempt to do so was and is a material breach of the Limited Partnership Agreement.

89.     At the time Defendant purported to close on the purchase of the Limited Partner's interests, Defendant was in default of Section 16.1 of the Limited Partnership Agreement. Specifically, Defendant had materially breached the Limited Partnership Agreement by using an unauthorized appraisal for the purpose of valuing the Limited Partner's interests under the Purchase Option. Defendant's attempt to close the transaction thus violated the condition that Defendant not be "then in default" of the Limited Partnership Agreement.

90.     Multi-Housing Partners has suffered and continues to suffer damages as a result of Defendant's breach, including but not limited to the unlawful usurpation of its right, title and interests in the Limited Partnership.

91.     The amount of Plaintiff's damages will be proven at trial but is believed to exceed $2.4 million.

### COUNT III
### (Breach of Fiduciary Duties)

92.     Multi-Housing Partners incorporates all allegations in the foregoing paragraphs as if set forth fully herein.

93.     Defendant, as the general partner of the Limited Partnership, owed and continues to owe fiduciary duties to the Limited Partnership and its partners, including Multi-Housing Partners. Those fiduciary duties include a duty to disclose to the other partners any information material to the conduct of the Limited Partnership's business, a duty of loyalty not to act adversely to the Limited Partnership, and a duty to act in good faith and deal fairly with the other partners. Those duties required Defendant, among other things, to refrain from obtaining and using an unauthorized and methodologically flawed appraisal to improperly value the Limited Partner's interests in the Limited Partnership and from unilaterally acting to usurp the Limited Partner's interests in the Limited Partnership.

94.     Defendant breached its fiduciary duties by, among other acts and omissions, obtaining and using an unauthorized and methodologically flawed appraisal to improperly value the interests of Multi-Housing Partners in the Limited Partnership.

95.     Defendant also has breached and continues to breach its fiduciary duties by, among other acts and omission, attempting to unlawfully convert the interests of Multi-Housing Partners in the Limited Partnership. Multi-Housing Partners has at all relevant times maintained ownership

of, legal title in, and the right to possess the Limited Partner's interests in the Limited Partnership. Defendant's actions purporting to unilaterally close on the purchase of the Limited Partner's interests constitute an attempt to wrongfully exercise dominion or control over the property of Multi-Housing Partners, thus attempting to deprive Multi-Housing Partners of clear title and possession of its interests in the Limited Partnership.

96.     Multi-Housing Partners has been and will continue to be damaged by Defendant's breach of fiduciary duties.

97.     The amount of Plaintiff's damages will be proven at trial but is believed to exceed $2.4 million.

## COUNT IV
### (Declaratory Judgment)

98.     Multi-Housing Partners incorporates all allegations in the foregoing paragraphs as if set forth fully herein.

99.     An actual controversy exists relating to the legal rights and duties of the parties to this dispute.

100.     Multi-Housing Partners respectfully requests, based upon the facts enumerated herein, a declaration (i) that Defendant has not complied with the Purchase Option and thus has not effectuated the purchase of the Limited Partner's interests in the Limited Partnership; (ii) that the CohnReznick appraisal is not a valid appraisal under the Limited Partnership Agreement for use in determining the fair market value of the Limited Partner's interests; (iii) that the Purchase Option cannot be consummated unless and until a valid appraisal is obtained; (iv) that the Limited Partner's interests must be valued using the distribution method set forth in Section 11.2(B) of the Limited Partnership Agreement; and (v) that Defendant lacks the authority to take any unilateral action that requires the consent of Multi-Housing Partners under the Limited Partnership

Agreement or the Revised Uniform Limited Partnership Act of Virginia, including but not limited to transferring, refinancing, or encumbering the Apartment Complex.

## COUNT V
**(Injunctive Relief)**

101.    Multi-Housing Partners incorporates all allegations in the foregoing paragraphs as if set forth fully herein.

102.    Multi-Housing Partners is entitled to the relief demanded herein, which includes restraining Defendant from committing or continuing to commit the acts complained of herein.

103.    Defendant has not validly consummated the Purchase Option and does not have the authority to take any unilateral action that requires the consent of Multi-Housing Partners under the Limited Partnership Agreement or the Virginia Revised Uniform Limited Partnership Act, including but not limited to transferring, refinancing, or encumbering the Apartment Complex.

104.    Despite not validly exercising the Purchase Option, upon information and belief, on or about March 9, 2020, Defendant unilaterally transmitted, without the knowledge or consent of Multi-Housing Partners, documents to VHDA requesting VHDA's approval of the unauthorized and ultra vires transfer to Defendant of the Limited Partner's interests in the Limited Partnership. Such transfer, if effected, would allow Defendant to subvert the consent rights of Multi-Housing Partners under the Limited Partnership Agreement, including but not limited to the prohibition of any transfer, refinancing, or encumbrance of the Apartment Complex without the written consent of Multi-Housing Partners.

105.    The Apartment Complex is improved real property, which is unique in character. Money damages would be insufficient to make Multi-Housing Partners whole if the Apartment Complex were improperly transferred, refinanced, or encumbered without the consent of Multi-Housing Partners.

106.     Multi-Housing Partners is entitled to an injunction prohibiting Defendant from holding itself or its designees out as the owner of the Limited Partner's interests in the Limited Partnership for any purpose, including but not limited to in connection with any attempted transfer, refinancing, or encumbrance of the Apartment Complex.

**COUNT VI**
**(Quiet Title)**

107.     Multi-Housing Partners incorporates all allegations in the foregoing paragraphs as if set forth fully herein.

108.     Multi-Housing Partners' title to the Limited Partner's interests in the Limited Partnership is superior to any title in those interests asserted by Defendant, as alleged herein.

109.     In order to prevent Multi-Housing Partners from being subjected to future claims against its title to the Limited Partner's interests in the Limited Partnership, Multi-Housing Partners is entitled to an order quieting its title to those interests in Multi-Housing Partners.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Multi-Housing Tax Credit Partners XXX respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a.     Enter a declaratory judgment (i) that the CohnReznick appraisal is not a valid appraisal for use in determining the fair market value of the Limited Partner's interests under the Limited Partnership Agreement; (ii) that Defendant has not complied with the terms of the Purchase Option and thus has not effectuated the purchase of the Limited Partner's interests in the Limited Partnership; (iii) that the Purchase Option has expired under the terms of Limited Partnership Agreement, or in the alternative, (iv) that the Purchase Option cannot be consummated unless and until a valid appraisal is obtained and (v) that the Limited Partner's interests must be valued using the distribution method

set forth in Section 11.2(B) of the Limited Partnership Agreement; and (vi) that Defendant lacks the authority to take any unilateral action that requires the consent of Multi-Housing Partners under the Limited Partnership Agreement or the Virginia Revised Uniform Limited Partnership Act, including but not limiting refinancing, transferring, or encumbering the Apartment Complex or the limited partnership interests of Plaintiff;

b.      Enter an order for specific performance and/or injunctive relief, directing Defendant to cease holding itself or its designees out as the owner of the Limited Partner's interests in the Limited Partnership and to cease any efforts to transfer, refinance, and/or encumber the Apartment Complex without the consent of Multi-Housing Partners;

c.      Enter an order quieting the title of Multi-Housing Partners to the Limited Partner's interests in the Limited Partnership;

d.      Award Multi-Housing Partners monetary damages in an amount to be proved at trial;

e.      Award Multi-Housing Partners its reasonable attorneys' fees and costs of suit; and

f.      Grant Multi-Housing Partners such other and further relief as this Court deems just and equitable.

Dated: August 10, 2020

Respectfully Submitted,

**NIXON PEABODY LLP**

By:    */s/Louis E. Dolan, Jr.*

Louis E. Dolan, Jr. (Va. Bar No. 34436)
Brian P. Donnelly (Va. Bar No. 82052)
799 9th Street, N.W., Suite 500
Washington, DC 20001
Telephone: 202-585-8000
ldolan@nixonpeabody.com
bdonnelly@nixonpeabody.com

*Counsel for Claimant Multi-Housing*
*Tax Credit Partners XXX*