IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MULTI-HOUSING TAX CREDIT
PARTNERS XXX,
        Plaintiff,

v.                                             Civil Action No. 3:20-cv-612

ALEXANDER DAIRY ASSOCIATES,
LLC,
        Defendant.

## OPINION

The plaintiff in this case, Multi-Housing Tax Credit Partners XXX ("Multi-Housing" or "Multi-Housing Partners"), alleges that defendant, Alexander Dairy Associates, LLC ("Alexander Dairy"), bilked them out of over $2.5 million by obtaining an unreasonably low appraisal of an apartment complex the parties manage.

Multi-Housing and Alexander Dairy operate a partnership called Richmond Dairy Associates, L.P. (the "Limited Partnership"). The Amended and Restated Agreement of the Limited Partnership dated April 5, 1999 (the "Limited Partnership Agreement"), governs the Limited Partnership. The Limited Partnership Agreement gives Alexander Dairy an option to buy Multi-Housing's interest in the Limited Partnership (the "Purchase Option").

Multi-Housing alleges that Alexander Dairy improperly exercised the Purchase Option and now improperly claims ownership of Multi-Housing's interest in the Limited Partnership. Specifically, Multi-Housing asserts that Alexander Dairy breached the Limited Partnership Agreement by purporting to buy Multi-Housing's interest in the Limited Partnership based on an unreasonably low appraisal of Richmond Dairy that it unilaterally obtained. Multi-Housing argues that this precludes Alexander Dairy from purchasing Multi-Housing's interest in the Limited Partnership.

Multi-Housing has filed a complaint against Alexander Dairy containing six counts: breach of contract for unauthorized valuation of the partnership interests (Count One), breach of contract for violation of the conditions of closing (Count Two), breach of fiduciary duties (Count Three), declaratory judgment (Count Four), injunctive relief (Count Five), and quiet title (Count Six). Alexander Dairy has moved to dismiss Counts Three through Six for failure to state a claim. Alexander Dairy also asked the Court to strike Multi-Housing's requests for attorneys' fees and costs.

Because Multi-Housing cannot plead injunctive relief as a cause of action, the Court will dismiss Count Five.[1] Otherwise, for the reasons stated herein, the Court will deny Alexander Dairy's motion.

## I. FACTS ALLEGED IN THE COMPLAINT

### A. *The Partnership*

Alexander Dairy and Multi-Housing operate the Limited Partnership according to the terms of the Limited Partnership Agreement. The Limited Partnership Agreement establishes Alexander Dairy as the general partner and Multi-Housing as the limited partner. Multi-Housing owns 99.99 percent of the partnership interests in the Limited Partnership, Alexander Dairy owns 0.005 percent, and another limited partner, Virginia Richmond Dairy Associates, L.P., owns the remaining 0.005 percent. The Limited Partnership operates the apartment complex known as Richmond Dairy.

### B. *The Purchase Option*

The Purchase Option in the Limited Partnership Agreement gives Alexander Dairy three-years to buy Multi-Housing's interest in the Limited Partnership after the expiration of a fifteen

---

[1] Multi-Housing may continue to seek injunctive relief, however.

2

year "Compliance Period" as defined by the Low-Income Housing Tax Credit ("LIHTC") program. 26 U.S.C. § 42(i)(1). To exercise the Purchase Option, Alexander Dairy had to deliver "written notice of its election to do so to [Multi-Housing] within said three[-]year period." (ECF No. 1-1 § 16.1(B).)

The Limited Partnership Agreement provides that the parties shall determine the purchase price of Multi-Housing's interest "by appraisal conducted by a member of the Appraisal Institute with note [sic] less than ten years [of] experience appraising low income housing projects and agreed upon by the Partners." (*Id.* § 16.1(C)(i).)

The Limited Partnership Agreement also requires that the closing of the sale of Multi-Housing's interest in the Limited Partnership occur within 130 days after Alexander Dairy notifies Multi-Housing of its intent to exercise the Purchase Option. At closing, Multi-Housing must deliver to Alexander Dairy a duly executed assignment of all its rights, title, and interest in the Limited Partnership, and Alexander Dairy must deliver to Multi-Housing the purchase price in immediately available funds.

### C. *Alexander Dairy Seeks to Exercise the Purchase Option*

On November 5, 2019, Alexander Dairy notified Multi-Housing that it intended to exercise the Purchase Option. Three days later, Alexander Dairy proposed that Knight, Dorin & Rountrey ("Knight") appraise the value of Multi-Housing's interest in Richmond Dairy. On December 26, 2019, Multi-Housing objected to Knight appraising Richmond Dairy because it lacked ten years of experience valuing LIHTC properties. Nevertheless, Multi-Housing agreed "that the 'scope of work, special conditions, and definition of value listed in Knight's agreement' were acceptable." (ECF No. 1 ¶ 46.)

On January 7, 2020, Alexander Dairy "purported to unilaterally engage Novogradac to perform the appraisal required" by the Limited Partnership Agreement. (*Id.* ¶ 49.) Despite the ostensible agreement with Novogradac, on January 20, 2020, Alexander Dairy "unilaterally purported to engage Donald Nimey and Patricia M. McGarr of CohnReznick to perform the appraisal." (*Id.* ¶ 50.) CohnReznick's proposal included an appraisal of Multi-Housing's interests in the Limited Partnership, i.e., a fractional-interest valuation, rather than an appraisal solely of Richmond Dairy. According to the complaint, this engagement also violated the agreement:

> Additionally, contrary to the requirement under the Limited Partnership Agreement that the appraisal be conducted by a single [Member Appraisal Institute ("MAI")]-designated appraiser, thus resulting in an appraisal solely of the improved real property, CohnReznick's engagement letter dated January 20, 2020[,] provided for an appraisal conducted by two appraisers, one of whom—Mr. Nimey—was not an MAI-designated appraiser and would be engaged to complete an appraisal of assets and/or interests other than the Apartment Complex itself.

(*Id.*)

On January 28, 2020, Multi-Housing objected "to the proposed engagement of Mr. Nimey and Ms. McGarr because it was not consistent with the requirements of the Limited Partnership Agreement." (*Id.* ¶ 51.) Multi-Housing informed Alexander Dairy "that it would agree to an appraisal of the Apartment Complex (but not of the Limited Partnership interests or fractional equity shares in the Apartment Complex) conducted by Andrew Lines, an MAI-designated appraiser also with Cohn Reznick." (*Id.*)

On January 31, 2020, Alexander Dairy sent Multi-Housing a "revised engagement letter" from CohnReznick. (*Id.* ¶ 52.)

> The revised engagement letter was materially the same as the previous engagement letter dated January 20, 2020, other than the substitution of Mr. Lines for Mr. Nimey. The scope of the work in the revised engagement letter still included an appraisal of [Multi-Housing]'s interest in the Limited Partnership, rather than of the Apartment Complex, thus exceeding the scope authorized by the Limited

4

Partnership Agreement and the scope to which Multi-Housing Partners had previously agreed.

(*Id.*) Moreover, "[t]he revised engagement letter . . . still provided for the appraisal to be conducted by two appraisers, contrary to the requirement under the Limited Partnership Agreement that the appraisal be conducted by a single MAI-designated appraiser devoted solely to appraising the improved real property." (*Id.*)

On February 6, 2020, Multi-Housing again objected "to the proposed revised engagement of CohnReznick because it was not consistent with the requirements of the Limited Partnership Agreement." (*Id.* ¶ 53.) Multi-Housing told Alexander Dairy "that it would agree to an appraisal of the Apartment Complex conducted by Mr. Lines consistent with the scope of the work set forth in Knight's proposed engagement letter, (i.e.[,] one that did not include a fractional-interest valuation)." (*Id.*)

On February 12, 2020, despite Multi-Housing's objection, Alexander Dairy informed Multi-Housing "that it intended to unilaterally engage CohnReznick under the terms of the January 29, 2020 engagement letter." (*Id.* ¶ 54.) Multi-Housing reiterated its objection to this one week later.

CohnReznick ultimately provided Alexander Dairy with an appraisal report and amendment thereto "that purported to value both the Apartment Complex and the limited partnership interests of Multi-Housing Partners in the Limited Partnership" (the "Disputed Appraisal"). (*Id.* ¶ 56.) The Disputed Appraisal and Alexander Dairy's unilateral engagement of CohnReznick "violated the terms of the Limited Partnership Agreement in several material respects." (*Id.*) The Disputed Appraisal also "used a flawed methodology that deflated the

appraised value of the Apartment Complex itself[,] which, in turn, caused an artificially low purported valuation of [Multi-Housing's] interests in the Limited Partnership." (*Id.* ¶ 57.)[2]

### D. *Alexander Dairy Attempts to Close the Sale of Multi-Housing's Partnership Interest*

On March 5, 2020, Alexander Dairy told Multi-Housing "that it was 'prepared to close' on the 'sale of [Multi-Housing]'s Interest' in the Limited Partnership on March 16, 2020, for the purchase price of $675,000." (*Id.* ¶ 64.) On March 11, 2020, Multi-Housing informed Alexander Dairy that it did not agree to the sale based on the Disputed Appraisal's improper valuation. The next day, Alexander Dairy said that if Multi-Housing "did not close on the sale of its limited partnership interests on March 16, 2020, then Defendant would 'forward the applicable check to [Multi-Housing Partners' counsel's] attention and treat the transaction as fully closed.'" (*Id.* ¶ 66 (alteration in original).)

On March 13, 2020, Multi-Housing restated the basis of its refusal to sell its partnership interest and told Alexander Dairy that it "would refuse delivery of any attempted payment of the purported purchase price." (*Id.* ¶ 67.) Multi-Housing also warned Alexander Dairy "that any effort to 'treat the transaction as fully closed' without the authorization of Multi-Housing Partners would constitute a breach of the Limited Partnership Agreement, a breach of [Alexander Dairy]'s fiduciary duties to [Multi-Housing], and an attempt at conversion of [Multi-Housing]'s property." (*Id.*)

On March 16, 2020, Alexander Dairy's representative traveled to Multi-Housing's offices in Gardena, California, "and attempted to force Multi-Housing Partners to close on a sale of its limited partnership interests despite Plaintiff's repeated admonitions that it did not authorize such

---

[2] Multi-Housing claims that Richmond Dairy has a fair market value of almost $9 million, which would result in a distribution to Multi-Housing of $3.3 million. The Disputed Appraisal valued Richmond Dairy at $4.8 million and Multi-Housing's partnership interest at $675,000.

a sale." (*Id.* ¶ 68.) Two days later, Alexander Dairy tried to deliver to Multi-Housing's attorney "a package containing a cover letter, a cashier's check payable to Multi-Housing Partners in the amount of $675,000, and documents purporting to unilaterally transfer the interests of Multi-Housing Partners in the Limited Partnership to" Alexander Dairy. (*Id.* ¶ 69.) Multi-Housing's attorney refused the delivery.

On March 23, 2020, Alexander Dairy sent Multi-Housing's attorney PDF images of the documents it tried to deliver on March 18, 2020. "The documents purporting to unilaterally transfer the limited partnership interests of Multi-Housing Partners to Defendant . . . were not executed by Multi-Housing Partners." (*Id.* ¶ 70.) Alexander Dairy informed Multi-Housing that it considered the transaction closed, and Multi-Housing "should no longer hold itself out as having any interest in or affiliation with the Partnership or" Richmond Dairy. (*Id.* ¶ 71.)

On March 25, 2020, Multi-Housing "reiterated that it did not accept Defendant's attempted tender of the purported purchase price and did not agree to the documents purporting to unilaterally transfer the limited partnership interests of Multi-Housing Partners" to Alexander Dairy. (*Id.* ¶ 72.) It also demanded that Alexander Dairy "immediately cease and desist all unilateral actions that require the consent of [Multi-Housing] under the Limited Partnership Agreement or the Virginia Revised Uniform Limited Partnership Act, including but not limited to holding itself out as the owner of [Multi-Housing]'s interests in the Limited Partnership." (*Id.*)

***E. Attempted Loan Transfer with the Virginia Housing Development Authority ("VHDA")***

On April 9, 2020, Multi-Housing received a letter from the VHDA asking Multi-Housing to agree "to certain conditions that were to be satisfied before VHDA would approve the purported transfer of an unspecified 'membership interest' in the Limited Partnership 'as described in the Loan Transfer Information Sheet and email (with attachments) dated March 9, 2020.'" (*Id.* ¶ 73.)

7

Multi-Housing did not know of or approve "the transmission of any Loan Transfer Information Sheet or email dated March 9, 2020[,] to VHDA." (*Id.* ¶ 74.)

## II. DISCUSSION[3]

### *A. Breach of Fiduciary Duties (Count Three)*

Alexander Dairy argues that Multi-Housing cannot assert a tort claim for breach of fiduciary duties because the allegedly violated duties arose under the Limited Partnership Agreement.

"[A] claim for breach of fiduciary duty can sound in contract or tort." *Bocek v. JGA Assocs., LLC*, 537 F. App'x 169, 176 (4th Cir. 2013). That said, "Virginia courts vigilantly police the border between tort and contract law so as '[t]o avoid turning every breach of contract into a tort.'" *Id.* at 177 (quoting *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290, 293 (2007)). Accordingly, "[i]f the 'fiduciary duty allegedly breached . . . existed solely because of the contractual relationship[,]' the plaintiff fails to state a valid claim for breach of fiduciary duty." *Winzeler v. Sanchez*, No. 2:13cv612, 2015 WL 12645001, at *8 (E.D. Va. July 27, 2015) (omission and second alteration in original) (quoting *Augusta*, 645 S.E.2d at 295).[4] "That certain of those fiduciary duties arose by implication does not alter the result." *Augusta*, 645 S.E.2d at 295. In

---

[3] The defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *See also Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 2:18cv656, 2019 WL 3557879, at *12 (E.D. Va. Aug. 5, 2019) ("[T]he fiduciary duties inherent in every agency relationship are deemed to arise in *contract* if such agency relationship is formed by contract." (emphasis in original)).

8

other words, when partners have memorialized their relationship in a contract, an allegedly harmed party can only sue in contract for harms that occurred during the contract's existence. Thus, a plaintiff may only recover in tort "in cases where the tort was committed *after* the termination of the parties' contract." *Bocek*, 537 F. App'x at 177.

Nearly all the fiduciary duties Alexander Dairy allegedly breached "existed solely because of the contractual relationship" between Multi-Housing and Alexander Dairy.[5] *Augusta*, 645 S.E.2d at 295. And Alexander Dairy allegedly breached these duties while the Limited Partnership Agreement remained in force. Multi-Housing claims, however, that Alexander Dairy breached fiduciary duties that fall *outside* of the Limited Partnership Agreement when it unilaterally attempted to transfer a loan with the VHDA.

The Court harbors grave doubts about this contention. Nevertheless, at this stage of the litigation, the Court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of Multi-Housing. Bound by those constraints, the Court finds that Multi-Housing has sufficiently pled that Alexander Dairy breached a fiduciary duty that arose independently of the Limited Partnership Agreement and after that contract's termination. Accordingly, the Court will deny Alexander Dairy's motion to dismiss Count Three.

---

[5] Multi-Housing alleges that Alexander Dairy breached its fiduciary duties "by, among other acts and omissions, obtaining and using an unauthorized and methodologically flawed appraisal to improperly value the interests of Multi-Housing Partners in the Limited Partnership." (ECF No. 1 ¶ 94.) Additionally, Multi-Housing claims that Alexander Dairy breached its fiduciary duties "by, among other acts and omission[s], attempting to unlawfully convert the interests of Multi-Housing Partners in the Limited Partnership." (*Id.* ¶ 95.) It explains that Alexander Dairy's "actions purporting to unilaterally close on the purchase of [Multi-Housing]'s interests constitute an attempt to wrongfully exercise dominion or control over the property of Multi-Housing Partners, thus attempting to deprive Multi-Housing Partners of clear title and possession of its interests in the Limited Partnership." (*Id.*) All these alleged harms relate directly to the contract.

### *B. Declaratory Judgment (Count Four)*

Alexander Dairy contends that Multi-Housing cannot state a claim for a declaratory judgment because the alleged breach of contract and damages have already happened.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), gives district courts "discretionary authority . . . to hear declaratory judgment cases." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998).[6] The Fourth Circuit has explained that courts should entertain declaratory judgment cases (1) "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . [(2)] when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Kapiloff*, 155 F.3d at 493 (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)).

Here, a declaratory judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Poston*, 88 F.3d at 256). Alexander Dairy and Multi-Housing dispute whether Alexander Dairy has good title to Multi-Housing's interest in the Limited Partnership. Because of the uncertainty created by this dispute, the parties disagree about whether Alexander Dairy can, for example, take unilateral action regarding Richmond Dairy. This controversy makes it almost impossible for either party to efficiently operate Richmond Dairy. A declaratory judgment will clarify the ownership interest, if any, that each party has in Richmond Dairy, thereby "terminat[ing] and afford[ing] relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Poston*, 88 F.3d at 256). Multi-Housing has, therefore, stated a claim for a declaratory judgment.

---

[6] *See also Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) ("[D]istrict courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions.").

10

### C. *Injunctive Relief (Count Five)*

Alexander Dairy urges the Court to dismiss Multi-Housing's claim for injunctive relief because "injunctive relief is a remedy not an independent cause of action." (ECF No. 6, at 10.)

As Alexander Dairy states, "injunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action." *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 862 (E.D. Va. 2016) (quoting *Dwoskin v. Bank of Am.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012)). Thus, the Court will dismiss Count Five with prejudice. *Id.* at 863 ("Because a remedy should not be pled as a cause of action, plaintiff need not be given leave to amend [its] complaint as no new allegations can save Count [Five].").

That said, Multi-Housing asks for an injunction in its ad damnum clause. Thus, the dismissal of Count Five as a standalone claim does not prevent Multi-Housing from seeking injunctive relief based on the surviving claims.

### D. *Quiet Title (Count Six)*

Alexander Dairy argues that Multi-Housing "fails to state a claim for quiet title because this Court cannot quiet title to [Multi-Housing]'s intangible interest in the Limited Partnership." (ECF No. 6, at 14.)

"[A]n action to quiet title is based on the premise that a person with good title to certain real *or personal property* should not be subjected to various future claims against that title." *Maine v. Adams*, 277 Va. 230, 238 672 S.E.2d 862, 866 (2009) (emphasis added). "Thus, in a quiet title action, a plaintiff asks the court to declare that he has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it." *Id.*

11

Here, Multi-Housing "asks the [C]ourt to declare that [it] has good title to" its ownership interest in the Limited Partnership. *Id.* "A partnership interest is personal property." Va. Code § 50-73.44. Because a plaintiff can seek to quiet title to "real *or personal property*," Multi-Housing can seek to quiet title to its interest in the Limited Partnership. *Adams*, 672 S.E.2d at 866 (emphasis added). Accordingly, the Court will deny the motion to dismiss Multi-Housing's quiet title claim.

### *E. Attorneys' Fees and Costs*

Alexander Dairy asks the Court to strike Multi-Housing's request for reasonable attorneys' fees and costs because Multi-Housing's complaint "fails to allege fraud, or any 'level of egregiousness' that would justify an award of attorney's fees." (ECF No. 10, at 8.)

"Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4-5 (1973) (footnotes omitted). Federal courts may "exercise this inherent equitable power whenever 'overriding considerations indicate the need for such a recovery.'" *Id.* at 5 (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). For example, a court could exercise this equitable power if a defendant's conduct "demonstrated a level of egregiousness comparable to constructive or intentional fraud." *Bocek v. JGA Assocs., LLC*, No. 1:11cv546, 2016 WL 1161401, at *14 (E.D. Va. Mar. 23, 2016).

Here, Multi-Housing claims that it has "alleged a level of egregiousness that, if proven, is sufficient for the Court to exercise its inherent power to award attorneys' fees." (ECF No. 9, at 13.) To support this claim, Multi-Housing points to its allegations that Alexander Dairy (1) "wrongfully considers Multi-Housing Partners 'to be fully redeemed of its Limited Partnership interest,'" and (2) "has held itself out to third parties (including State governmental agencies),

12

unbeknownst to Multi-Housing Partners at the time, as the transferee of the limited partnership interests with full knowledge that Multi-Housing Partners has never consented to the transfer and that the transfer has never been completed." (*Id.*)

At this stage of the litigation, the Court cannot determine whether Alexander Dairy's conduct entitles Multi-Housing to costs and attorneys' fees. Perhaps Multi-Housing will discover that Alexander Dairy had a long-standing plan to violate the Limited Partnership Agreement. Maybe Multi-Housing will unearth that Alexander Dairy bribed CohnReznick as part of a kickback scheme. The Court cannot forecast the surprises that may arise during litigation. As such, it cannot definitively find that Multi-Housing will not and cannot recover its costs and attorneys' fees.

Moreover, Multi-Housing seeks attorneys' fees and costs based on the Court's equitable powers, not a statute or contractual provision. The Court's power to exercise its inherent equitable authority to award costs and attorneys' fees does not rest on the adequacy of Multi-Housing's complaint. Thus, the Court will deny Alexander Dairy's motion to strike Multi-Housing's request for costs and attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, the Court will deny in part and grant in part Alexander Dairy's motion to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 18 December 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge