IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MULTI-HOUSING TAX CREDIT
PARTNERS XXX,
        Plaintiff,

v.                                          Civil Action No. 3:20-cv-612

ALEXANDER DAIRY ASSOCIATES,
LLC,
        Defendant.

## **OPINION**

The plaintiff, Multi-Housing Tax Credit Partners XXX ("Multi-Housing" or "Multi-Housing Partners"), and the defendant, Alexander Dairy Associates, LLC ("Alexander Dairy"), disagree about whether Alexander Dairy properly exercised its option to buy Multi-Housing's interest in the limited partnership they operate (the "Purchase Option").

The parties' partnership agreement requires them to agree on an appraiser whose appraisal sets the purchase price of Multi-Housing's interest in the partnership. Multi-Housing alleges that Alexander Dairy did not comply with this provision and now improperly claims ownership of Multi-Housing's interest in the limited partnership. Alexander Dairy contends that Multi-Housing approved the appraiser who appraised Multi-Housing's interest in the partnership, making Alexander Dairy the owner of Multi-Housing's interest in the limited partnership.

Alexander Dairy moves for summary judgment on all Multi-Housing's claims and its counterclaim.[1] Because the undisputed facts do not show that Multi-Housing agreed to the contested appraisal, the Court will deny Alexander Dairy's motion.

---

[1] Multi-Housing asserts six claims against Alexander Dairy: breach of contract for unauthorized valuation of the partnership interests (Count I), breach of contract for violating the conditions of closing (Count II), breach of fiduciary duties (Count III), declaratory judgment (Count IV), quiet title (Count VI), and breach of contract for Alexander Dairy's failure to provide

## I. BACKGROUND[2]

### *A. The Partnership*

Alexander Dairy and Multi-Housing operate a limited partnership, Richmond Dairy Associates, L.P. (the "Limited Partnership"), according to the terms of the Amended and Restated Agreement of Limited Partnership of Richmond Dairy Associates, L.P., a Virginia Limited Liability Partnership (the "Limited Partnership Agreement").[3] The Limited Partnership

---

operations reports as required by the Limited Partnership Agreement (Count VII). The Court dismissed Count V—a claim for injunctive relief—on December 18, 2020. (ECF No. 25.) Alexander Dairy brought a counterclaim against Multi-Housing, alleging breach of contract for obstructing Alexander Dairy's exercise of the Purchase Option.

[2] Multi-Housing attached a fifteen-page Appendix to its twenty-nine-page opposition brief to Alexander Dairy's summary judgment motion. The Appendix includes Multi-Housing's response to Alexander Dairy's statement of undisputed facts and its own statement of undisputed facts. Multi-Housing incorporates the Appendix by reference into its opposition brief, making the combined document forty-four pages.
This violates the local rules in two ways. First, by responding to Alexander Dairy's statement of undisputed facts in an Appendix instead of in its opposition brief, Multi-Housing circumvents Local Rule 7(F)(3), which provides that "[e]xcept for good cause shown *in advance of filing*, opening and responsive briefs, exclusive of affidavits and supporting documentation, shall not exceed thirty (30) 8-1/2 inch x 11 inch pages double-spaced." (emphasis added). If Multi-Housing believed it had good cause to exceed the thirty-page limit for its opposition brief, then it should have filed a motion explaining that and asking for leave to file a brief exceeding thirty pages.
Second, Local Rule 56(B) says that briefs *supporting* summary judgment motions "shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue." The *opposition* brief "shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated." Local Rule 56(B) does not permit the party opposing summary judgment to file its own statement of undisputed facts. Because Multi-Housing did not move for summary judgment, it should not have set forth its own statement of undisputed facts.
Despite these violations, the Court considers the full forty-four pages in the interest of justice.

[3] Pursuant to a choice of law provision in the Limited Partnership Agreement, Virginia law governs this case. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) ("Because this action was filed in Virginia, we look to that state's laws to determine which state's laws govern [the parties'] claims. Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances, none of which exist here.").

2

Agreement establishes Alexander Dairy as the general partner and Multi-Housing as a limited partner. The Limited Partnership operates the apartment complex known as Richmond Dairy.

### B. *The Purchase Option*

Article XVI of the Limited Partnership Agreement details the Purchase Option. Paragraph 16.1(C) of the Limited Partnership Agreement gives Alexander Dairy the option to buy Multi-Housing's interest in the Limited Partnership for a purchase price "equal to the greater of:"

> (i) The fair market value of the Limited Partner's Interest as determined by appraisal conducted by a member of the Appraisal Institute with note [sic] less than ten years [of] experience appraising low income housing projects and agreed upon by the Partners (the appraiser will be instructed to value the Limited Partner's Interest assuming continued use of the Property for low income housing, and to assume that the monthly rental income from the Property will be equal to the lesser of (1) the average monthly rental income of the twelve complete calendar months immediately preceding the month in which the General Partner gives notice of its election to exercise the Option, or (2) the maximum monthly rental income that the Property would produce based on the gross rents chargeable for rent-restricted units pursuant to Section 42(g)(2) of the Code as of the date on which the General Partner gives notice of its election to exercise the Option); or
> (ii) A price equal to the sum of: (1) all taxes ("Tax Liability") which shall be due and owing by the Limited Partner to any taxing authority, including but not limited to, the Internal Revenue Service, or its equivalent, and the State of Virginia, arising out of the Limited Partner's sale of its Interest in the Partnership to the General Partner, (2) the present value of all anticipated Tax Credits the Limited Partner has not yet received, and (3) $100.

(ECF No. 20-1 ¶ 16.1(C).) The valuation method delineated in Paragraph 16(C)(i) applies here.

Paragraph 16.1(E) sets forth the procedure for the closing of the sale of Multi-Housing's interest in the Limited Partnership. Among other things, at closing, Multi-Housing must deliver to Alexander Dairy a duly executed assignment of its rights, title, and interest in the Limited Partnership, and Alexander Dairy must deliver to Multi-Housing the purchase price in immediately available funds.

### *C. Alexander Dairy Seeks to Exercise the Purchase Option*

On November 8, 2019, Alexander Dairy notified Multi-Housing that it intended to exercise the Purchase Option and proposed that Knight Dorin & Rountrey ("Knight") appraise the value of Multi-Housing's interest in Richmond Dairy.[4] Multi-Housing objected to Knight appraising Richmond Dairy and proposed three alternative appraisers: CBRE, CohnReznick, and Novogradac. Multi-Housing noted that "[t]he scope of work, special conditions, and definition of value listed in Knight's agreement . . . are fine and can be used by the selected appraiser." (ECF No. 47-4.)

On January 7, 2020, Alexander Dairy told Multi-Housing that it had hired Novogradac "to appraise The Dairy, as outlined in our partnership agreement." (ECF No. 47-5.) The parties, however, could not agree on the scope of Novogradac's appraisal. Thus, Alexander Dairy selected CohnReznick to perform the appraisal, notifying Multi-Housing of the selection on January 17, 2020. Three days later, Alexander Dairy sent Multi-Housing a proposed engagement letter signed by two CohnReznick employees, Donald Nimey and Patricia M. McGarr. The proposed engagement letter called for an appraisal both of Multi-Housing's interest in the Limited Partnership (a "valuation analysis") and an appraisal of "the 'as-is' fair market value of the fee simple interest of the real property owned and operated" by the Limited Partnership. (ECF No. 47-9.)

By letter dated January 28, 2020, Multi-Housing informed Alexander Dairy that it would not agree to this engagement letter because it included two appraisers, one of whom (Nimey) lacked the qualifications delineated in Paragraph 16.1(C)(i) of the Limited Partnership Agreement.

---

[4] Closing had to occur within 130 days of that notification. (*See* ECF No. 20-1 ¶ 16.1(E).) Thus, the parties had a closing deadline of March 17, 2020.

4

Multi-Housing said it "[was] prepared to agree to an appraisal of the Partnership's *improved real property* [as opposed to a valuation analysis], in accordance with the Partnership Agreement, conducted solely by Andrew Lines, MAI, also of CohnReznick." (ECF No. 47-10 (emphasis added).) Multi-Housing also offered "to come to agreement with [Alexander Dairy] on appropriate valuation instructions to be delivered to Mr. Lines." (*Id.*)

Three days later, Alexander Dairy sent Multi-Housing a revised engagement letter signed by McGarr and Lines. Like the first engagement letter, the revised engagement letter called for a valuation analysis and an appraisal of "the 'as-is' fair market value of the fee simple interest of the real property owned and operated" by the Limited Partnership. (ECF No. 47-11.)

Multi-Housing once against refused to agree to the revised engagement letter because it "appear[ed] to be identical to" the first engagement letter, "containing the same terms and conditions [Multi-Housing] previously objected to, other than substituting Mr. Lines for Donald Nimey as one of the two CohnReznick appraisers." (ECF No. 47-12.) Multi-Housing complained that the revised engagement letter

> identifies the same scope of services as the [first] engagement letter, despite our objections as most recently stated in [Multi-Housing's] letter of January 28, 2020—namely that the appraisal is to be an appraisal of real property only, conducted by one MAI appraiser, from which the partners can thereby determine the value of the limited partner interests in accordance with the Partnership Agreement.

(*Id.*) Multi-Housing also expressed concern that, based on a conversation with Lines, "Mr. Nimey and/or other non-members of the Appraisal Institute would continue to be involved in the appraisal process and CohnReznick would also complete an appraisal of the limited partner interests using techniques and methodology that is not utilized in a MAI appraisal." (*Id.*) Multi-Housing reiterated that it "previously agreed to use the scope of work, special conditions, and definition of value in the" Knight appraisal. (*Id.*)

On February 12, 2020, despite Multi-Housing's objections, Alexander Dairy decided to have CohnReznick proceed with the appraisal required by the Limited Partnership Agreement. Multi-Housing reiterated its disagreement with this a week later. On February 28, 2020, Alexander Dairy sent Multi-Housing a draft appraisal report from CohnReznick that valued Multi-Housing's interest in the Limited Partnership at $675,000.

### D. *Alexander Dairy Attempts to Close the Sale of Multi-Housing's Partnership Interest*

On March 5, 2020, Alexander Dairy told Multi-Housing that it "is prepared to close on March 16, 2020, and to deliver at closing the purchase price of $675,000 in immediately available funds." (ECF No. 47-15.) Alexander Dairy also shared drafts of two documents required at closing: an assignment of Multi-Housing's rights, title, and interest and a post-transfer indemnification agreement. On March 11, 2020, Multi-Housing informed Alexander Dairy that it would not close on March 16. The next day, despite Multi-Housing's objection, Alexander Dairy told Multi-Housing that it would proceed with its plan to close on the sale of Multi-Housing's interest in the Limited Partnership by sending a representative to Multi-Housing's California headquarters with the required closing documents. If Multi-Housing "refuse[d] to close . . . then Alexander Dairy [would] forward the applicable check" to Multi-Housing "and treat the transaction as fully closed." (ECF No. 47-18.) On March 13, 2020, Multi-Housing restated that it would refuse to close on the sale of its partnership interest and would not accept any funds that purported to represent the purchase price of its partnership interest.

Undeterred by these warnings, Alexander Dairy sent a representative to Multi-Housing's offices to close the sale of Multi-Housing's partnership interest on March 16, 2020. Multi-Housing refused to meet with Alexander Dairy's representative. Two days later, Alexander Dairy sent a letter to Multi-Housing with a check for the purported purchase price, a post-transfer

6

indemnification agreement, and an assignment of Multi-Housing's interest in the Limited Partnership. Alexander Dairy claimed to have "fully met the requirements" for the exercise of the Purchase Option and, therefore, "consider[ed] the transaction *closed*." (ECF No. 47-20 (emphasis in original).) Multi-Housing's attorney refused delivery of the letter and enclosures. On March 23, 2020, Alexander Dairy sent Multi-Housing's attorney PDF images of the letter and enclosures it tried to deliver on March 18, 2020. After the "closing," Alexander Dairy refused to deliver the operations reports from the second and third quarters of 2020 (the "operations reports") as required by the Limited Partnership Agreement.

## II. <u>DISCUSSION</u>[5]

Alexander Dairy argues that "[i]f this Court determines that the CohnReznick appraisal was authorized by Multi-Housing Partners and conducted in accordance with the plain language of the [Limited Partnership Agreement], Counts I through IV and VI of the Supplemental Complaint fail." (ECF No. 65, at 16.) The undisputed facts do not show that Multi-Housing authorized the CohnReznick appraisal. Thus, the Court will deny Alexander Dairy's summary judgment motion.

---

[5] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, if "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict," then the court must deny summary judgment. *Anderson*, 477 U.S. at 252.

### A. *Breach of Contract for Unauthorized Valuation of the Partnership Interest (Count I)*

Multi-Housing alleges that Alexander Dairy breached the Limited Partnership Agreement in part because Multi-Housing did not agree to the CohnReznick appraisal.[6] "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Alexander Dairy argues that Multi-Housing cannot establish the second element—breach. Specifically, Alexander Dairy contends that Multi-Housing authorized the CohnReznick appraisal because "CohnReznick was one of the three approved firms that Multi-Housing Partners authorized Alexander Dairy to use for the appraisal, and . . . Andrew Lines—the appraiser who signed CohnReznick's appraisal report—was the appraiser that Multi-Housing Partners insisted upon." (ECF No. 47, at 21.)

This argument fails. The undisputed facts do not show that Multi-Housing agreed to the CohnReznick appraisal merely because it identified CohnReznick as an acceptable appraisal company and Lines as an acceptable appraiser. Indeed, Multi-Housing repeatedly said that it *did not agree* to the CohnReznick appraisal for a variety of reasons, including that having more than one appraiser conduct the appraisal violated the Limited Partnership Agreement's unambiguous provision that "*a* member of the Appraisal Institute with note [sic] less than ten years [of] experience appraising low income housing projects" must conduct the appraisal. (ECF No. 20-1

---

[6] Multi-Housing alleges that Alexander Dairy breached the Limited Partnership Agreement in many other ways. Because the Court finds that the undisputed evidence does not show that Multi-Housing agreed to the CohnReznick appraisal, it need not address Multi-Housing's other allegations.

8

¶ 16.1(C)(i) (emphasis added).)[7] Because Multi-Housing did not agree to the CohnReznick appraisal,[8] the Court will deny Alexander Dairy's motion for summary judgment as to Count I.

### B. Breach of Contract for Violating the Conditions of Closing (Count II)

Alexander Dairy also argues that Multi-Housing cannot establish breach as to Count II. Once again, the unresolved dispute about whether Multi-Housing authorized the CohnReznick appraisal sinks Alexander Dairy's argument. Alexander Dairy could only exercise the Purchase Option and close on the sale of Multi-Housing's interest in the Limited Partnership if it "[was] not . . . in default under the terms of" the Limited Partnership Agreement. (ECF No. 20-1 ¶ 16.1.)[9] As stated above, the undisputed evidence does not show that Multi-Housing agreed to the CohnReznick appraisal as required by the Limited Partnership Agreement. Thus, a reasonable fact finder could conclude that Alexander Dairy had "default[ed] under the terms of" the Limited Partnership Agreement, preventing it from closing on the sale of Multi-Housing's interest in the Limited Partnership. (*Id.*)

In addition, Alexander Dairy acted, and still acts, as if it closed on Multi-Housing's interest in the Limited Partnership, even though it never received an executed assignment of Multi-Housing's rights, title, and interest in the Limited Partnership as required by Article XVI Paragraph

---

[7] *Cf. White Oak Power Constructors v. Mitsubishi Hitachi Power Sys. Ams., Inc.*, No. 3:17cv355, 2019 WL 3752961, at *3 (E.D. Va. Aug. 8, 2019) ("If the contract is unambiguous, the court must enforce it as read and cannot consider evidence about its meaning beyond the text itself.").

[8] The parties dispute whether they had to agree to the appraisal or just to the appraiser. The Court need not resolve that dispute now. At minimum, the parties had to agree to the appraiser. And the undisputed evidence shows that did not happen here.

[9] The Limited Partnership Agreement equates default with breach of the Limited Partnership Agreement. (ECF No. 2-1 art. I ("'Event of Default' means any breach or default of any covenants, agreements, representations, or warranties of the General Partner . . . in this Agreement . . . .").)

9

16.1(E) of the Limited Partnership Agreement. Alexander Dairy says that Multi-Housing bears the blame for the failure to meet this condition of closing. (*See* ECF No. 47, at 26; ECF No. 7 ¶¶ 32-35, 40-43.) But that argument misses the point. Even if Multi-Housing's intransigence prevented the closing, that would not give Alexander Dairy license to ignore the express provisions of the Limited Partnership Agreement and act as if it successfully closed on the Purchase Option when it plainly did not. If Alexander Dairy could do that, then parties to a contract would not need to rely on courts to enforce their agreements. Instead, they could decide whether a breach occurred and arrogate to themselves the appropriate remedy.

For these reasons, Multi-Housing has proffered enough evidence for a reasonable fact finder to determine that Alexander Dairy violated the conditions of closing. The Court, therefore, will deny Alexander Dairy's motion for summary judgment as to Count II.

### C. *Breach of Fiduciary Duties (Count III)*

Multi-Housing claims that Alexander Dairy breached the fiduciary duties it owes to it by, among other things, acting as if Multi-Housing no longer had a stake in the Limited Partnership. (ECF No. 60, at 28.) To establish a prima facie breach of fiduciary duty claim under Virginia law, Multi-Housing must show "(1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1016 (E.D. Va. 2018) (quoting *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011)). Alexander Dairy disputes that it breached any fiduciary duties it owes Multi-Housing.

Under the Virginia Uniform Partnership Act ("VUPA"),[10] Alexander Dairy owes Multi-Housing duties of loyalty and care. Va. Code § 50-73.102(A). It also has an obligation of good

---

[10] The provisions of the VUPA apply here because, under the Virginia Revised Uniform Limited Partnership Act, "[e]xcept as provided in this chapter, a general partner of a limited

10

faith and fair dealing. *See id.* § 50-73.102(D). These duties arise independent of the Limited Partnership Agreement. *See Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*, No. 7:11cv25, 2012 WL 1598130, at *4 (W.D. Va. May 4, 2012) ("Fiduciary duties owed by one partner to other partners are common law duties and thus independent from duties that may be imposed under the Partnership Agreement.").

Here, a reasonable fact finder could determine that Alexander Dairy breached its duties of loyalty and care and its obligation of good faith and fair dealing by holding itself out as having closed on Multi-Housing's interest in the Limited Partnership when Multi-Housing repeatedly objected to the CohnReznick appraisal and Alexander Dairy did not receive the executed assignment of rights, title, and interest that it knew it needed to close on the Purchase Option.[11] Accordingly, the Court will deny Alexander Dairy summary judgment on Count III.

### D. Declaratory Judgment (Count IV) & Quiet Title (Count VI)

Multi-Housing seeks a declaratory judgment that, among other things, Alexander Dairy "has not complied with the Purchase Option and thus has not effectuated the purchase of the Limited Partner's interests in the Limited Partnership," "the CohnReznick appraisal is not a valid appraisal under the Limited Partnership Agreement for use in determining the fair market value of the Limited Partner's interests," and "the Purchase Option cannot be consummated unless and until

---

partnership has the liabilities of a partner in a partnership without limited partners to persons other than the partnership and the other partners." Va. Code § 50-73.29(B).

[11] *See Khader v. Hadi Enters.*, No. 1:10cv1048, 2010 WL 5300876, at *5 (E.D. Va. Dec. 22, 2010) ("Fiduciary duties create a higher duty of care between parties than do contractual duties. It follows logically, then, that one who states a claim for breach of contract and pleads the existence of a partnership has sufficiently pleaded a breach of fiduciary duty."); Va. Code § 50-73.102(C) (providing that the duty of care requires a partner "to refrain[] from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law").

11

a valid appraisal is obtained." (ECF No. 20-1 ¶ 110.) It also seeks an order quieting title to its interest in the Limited Partnership.

Alexander Dairy argues that the survival of these claims "hinge upon Multi-Housing Partners' allegation that the CohnReznick appraisal is not valid because it does not use" the distribution waterfall set forth in Paragraph 11.2(B) of the Limited Partnership Agreement. (ECF No. 47, at 24.) This takes too narrow a view of what will allow Counts IV and VI to survive; these claims survive so long as uncertainty exists about the owner of Multi-Housing's interest in the Limited Partnership.[12] For the reasons stated above, such uncertainty *does* exist. Accordingly, the Court will deny Alexander Dairy's motion for summary judgment on Counts IV and VI.

### E. Breach of Contract for Failing to Provide Operations Reports (Count VII)

In Count VII, Multi-Housing alleges that Alexander Dairy breached the Limited Partnership Agreement by failing to provide the required operations reports. (ECF No. 20-1 ¶ 9.3(B).) Alexander Dairy does not dispute that it failed to provide the operations reports. Nevertheless, it argues that this claim "cannot survive summary judgment because Multi-Housing Partners has suffered no damages as a result of Alexander Dairy's alleged breach of contract." (ECF No. 47, at 24.) Multi-Housing counters that it could not establish the damages caused by this breach because Alexander Dairy did not provide the operations reports until the day before Multi-Housing had to file its opposition to Alexander Dairy's summary judgment motion.

---

[12] *Cf. United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (explaining that courts should entertain declaratory judgment cases (1) "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . [(2)] when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996))); *Maine v. Adams*, 277 Va. 230, 238, 672 S.E.2d 862, 866 (2009) ("[I]n a quiet title action, a plaintiff asks the court to declare that he has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it.").

The Court agrees that Multi-Housing's inability to establish damages with specificity does not entitle Alexander Dairy to summary judgment on Count VII. If the Court held otherwise, it would reward Alexander Dairy for its obstinacy. Alexander Dairy admits that it did not provide Multi-Housing with the operations reports until the Court compelled it do so. But Alexander Dairy thinks it had the right to withhold the reports because it successfully exercised the Purchase Option, (*see* ECF No. 42, at 3); never mind that Multi-Housing sues to contest that very fact. In other words, Alexander Dairy decided that Multi-Housing's lawsuit lacks merit and, therefore, it can act as if it has already won the case. The Court does not condone this sort of self-help. In addition, Multi-Housing need not prove its contract damages with specificity because the Court can award Multi-Housing nominal damages if it prevails on Count VII. *See Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 159, 818 S.E.2d 779, 785 (2018) (noting that under Virginia law a court may award nominal damages in a contractual dispute when a plaintiff cannot prove its damages with certainty).[13] Thus, the undisputed facts do not entitle Alexander Dairy to summary judgment on Count VII.

### F. *Breach of Contract for Obstructing Alexander Dairy's Exercise of the Purchase Option (Counterclaim)*

Finally, Alexander Dairy argues that the Court should grant it summary judgment on its counterclaim because Multi-Housing has "refus[ed] to abide by the terms of the" Limited Partnership Agreement and obstructed Alexander Dairy's ability to exercise the Purchase Option. (ECF No. 47, at 26.) This claims rests on Alexander Dairy's contention that it "has met all of the

---

[13] *See also id.* at 159-60, 818 S.E.2d at 785-86 ("Nominal damages are 'appropriate when there is a legal right to be vindicated against an invasion that has produced no actual, present loss of any kind or where, from the nature of the case, some injury has been done but the proof fails to show the amount.'" (quoting *Town & Country Props., Inc. v. Riggins*, 249 Va. 387, 399, 457 S.E.2d 356, 399 (1995))).

requirements for the exercise of its Option and has properly effectuated the purchase of the Limited Partner's Interest." (*Id.*) Because the Court finds that the undisputed evidence does not show that Alexander Dairy met all the prerequisites for exercising the Purchase Option, it will not grant summary judgment to Alexander Dairy on its counterclaim.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Alexander Dairy's summary judgment motion.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 16 March 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge