IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MULTI-HOUSING TAX CREDIT
PARTNERS XXX,
        Plaintiff,

v.                                                                                                              Civil Action No. 3:20cv612

ALEXANDER DAIRY ASSOCIATES,
LLC,
        Defendant.

## OPINION

The plaintiff, Multi-Housing Tax Credit Partners XXX ("Multi-Housing" or "Multi-Housing Partners"), sued the defendant, Alexander Dairy Associates, LLC ("Alexander Dairy"), for improperly exercising its option to buy Multi-Housing's interest in the limited partnership they operate (the "Purchase Option").[1]

Multi-Housing claims that Alexander Dairy did not comply with a provision in the parties' partnership agreement that requires them to agree on an appraiser whose appraisal sets the purchase price for Multi-Housing's interest in the partnership. Multi-Housing contends that, because it failed to comply with this provision, Alexander Dairy improperly claimed ownership of Multi-Housing's interest in the limited partnership. Alexander Dairy thinks that Multi-Housing approved the appraiser who appraised Multi-Housing's interest in the partnership, which allowed Alexander

---

[1] Multi-Housing asserts six claims against Alexander Dairy: breach of contract for unauthorized valuation of the partnership interests (Count I), breach of contract for violating the closing conditions (Count II), breach of fiduciary duties (Count III), declaratory judgment (Count IV), quiet title (Count VI), and breach of contract for Alexander Dairy's failure to provide operations reports as required by the parties' partnership agreement (Count VII). The Court dismissed Count V—a claim for injunctive relief—on December 18, 2020. (ECF No. 25.) Alexander Dairy brought a counterclaim against Multi-Housing, alleging breach of contract for obstructing Alexander Dairy's exercise of the Purchase Option.

Dairy to exercise the Purchase Option and become the owner of Multi-Housing's interest in the limited partnership.

For the reasons set forth below, the Court finds that the parties *did not* agree on an appraiser to set the purchase price for Multi-Housing's interest in the partnership. Thus, Alexander Dairy improperly claimed ownership of that interest. But Multi-Housing did not establish any damages caused by Alexander Dairy's improper exercise of the Purchase Option. Accordingly, the Court will enter judgment for Multi-Housing and against Alexander Dairy and award nominal damages to Multi-Housing. The Court will also enter a declaratory judgment stating that (1) Multi-Housing remains a limited partner in the parties' limited partnership and (2) the deadline for Alexander Dairy to exercise the Purchase Option has passed.

## I. **FACTUAL FINDINGS**[2]

### *A. The Partnership*

Alexander Dairy and Multi-Housing operate a limited partnership, Richmond Dairy Associates, L.P. (the "Limited Partnership"), according to the terms of the Amended and Restated Agreement of Limited Partnership of Richmond Dairy Associates, L.P., a Virginia Limited Liability Partnership (the "Limited Partnership Agreement").[3] The Limited Partnership

---

[2] Federal Rule of Civil Procedure 52(a)(1) provides that, "[i]n an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately." Factual findings "should represent the judge's own determination and not the long, often argumentative statements of successful counsel." Fed. R. Civ. P. 52(a) advisory committee's note to 1946 amendment. Accordingly, the Court "need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." *Id.*

The Court may state its findings and conclusions in an opinion. Fed. R. Civ. P. 52(a)(1). The Court must enter judgment in a separate document under Rule 58. *Id.*

[3] Pursuant to a choice of law provision in the Limited Partnership Agreement, Virginia law governs this case. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) ("Because this action was filed in Virginia, we look to that state's laws to determine which state's

Agreement establishes Alexander Dairy as the general partner and Multi-Housing as a limited partner. The Limited Partnership operates the apartment complex known as the Richmond Dairy.

### B. *The Purchase Option*

Article XVI of the Limited Partnership Agreement details the Purchase Option. Paragraph 16.1(C) of the Limited Partnership Agreement gives Alexander Dairy the option to buy Multi-Housing's interest in the Limited Partnership for a purchase price "equal to the greater of":

> (i) The fair market value of the Limited Partner's Interest as determined by appraisal conducted by a member of the Appraisal Institute with note [sic] less than ten years [of] experience appraising low income housing projects and agreed upon by the Partners (the appraiser will be instructed to value the Limited Partner's Interest assuming continued use of the Property for low income housing, and to assume that the monthly rental income from the Property will be equal to the lesser of (1) the average monthly rental income of the twelve complete calendar months immediately preceding the month in which the General Partner gives notice of its election to exercise the Option, or (2) the maximum monthly rental income that the Property would produce based on the gross rents chargeable for rent-restricted units pursuant to Section 42(g)(2) of the Code as of the date on which the General Partner gives notice of its election to exercise the Option); or
> (ii) A price equal to the sum of: (1) all taxes ("Tax Liability") which shall be due and owing by the Limited Partner to any taxing authority, including but not limited to, the Internal Revenue Service, or its equivalent, and the State of Virginia, arising out of the Limited Partner's sale of its Interest in the Partnership to the General Partner, (2) the present value of all anticipated Tax Credits the Limited Partner has not yet received, and (3) $100.

(Pl.'s Ex. 1 ¶ 16.1(C).) The valuation method delineated in Paragraph 16(C)(i) applies here.

Paragraph 16.1(E) sets forth the procedure for closing on the sale of Multi-Housing's interest in the Limited Partnership. Among other things, at closing, Multi-Housing must deliver to Alexander Dairy a duly executed assignment of its rights, title, and interest in the Limited Partnership, and Alexander Dairy must deliver to Multi-Housing the purchase price in immediately available funds.

---

laws govern [the parties'] claims. Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances, none of which exist here.").

### C. *Alexander Dairy Seeks to Exercise the Purchase Option*

On November 8, 2019, Alexander Dairy, believing that it "[was its] time to get paid," (Trial Tr. 329:19), notified Multi-Housing that it intended to exercise the Purchase Option.[4] Alexander Dairy proposed that Knight Dorin & Rountrey ("Knight") appraise the value of Multi-Housing's interest in the Richmond Dairy. Multi-Housing rejected that proposal and suggested three alternative appraisers: CBRE, CohnReznick, and Novogradac. Multi-Housing noted that "[t]he scope of work, special conditions, and definition of value listed in Knight's agreement . . . are fine and can be used by the selected appraiser." (Pl.'s Ex. 17.)

On January 6, 2020, a Novogradac representative told Alexander Dairy that it could conduct the appraisal required by the Purchase Option by "provid[ing] fair market value appraisals of the [Richmond Dairy] and then work[ing] with tax audit folks to review [the] partnership agreement and construct a waterfall based on the priority distributions per the" Limited Partnership Agreement. (Trial Tr. 416:9-13.) Steven Alexander, Alexander Dairy's managing partner, called that proposal "[p]erfect." (Trial Tr. 416:22.)

The next day, Alexander Dairy told Multi-Housing that it had hired Novogradac "to appraise The Dairy, as outlined in our partnership agreement." (Pl.'s Ex. 19.) Despite stating that it "engaged Novogradac" to perform the appraisal, (*id.*), both parties and Novogradac agreed that *both* Alexander Dairy *and* Multi-Housing—as Novogradac's clients—must sign the engagement letter for the Limited Partnership to formally retain Novogradac. Ultimately, the parties did not engage Novogradac, at least in part because they could not agree on the scope of Novogradac's appraisal.

---

[4] Closing had to occur within 130 days of that notification. (*See* Pl.'s Ex. 1 ¶ 16.1(E).) Thus, the parties had a closing deadline of March 17, 2020.

4

With the parties unable to agree on Novogradac, Alexander Dairy set its sights on CohnReznick; and, on January 17, 2020, Alexander Dairy informed Multi-Housing that it had selected CohnReznick to perform the appraisal. Three days later, Alexander Dairy sent Multi-Housing a proposed engagement letter signed by two CohnReznick employees, Donald Nimey and Patricia M. McGarr. The proposed engagement letter called for an appraisal both of Multi-Housing's interest in the Limited Partnership (a "valuation analysis") and an appraisal of "the 'as-is' fair market value of the fee simple interest of the real property owned and operated" by the Limited Partnership. (Def.'s Ex. 24.) The engagement letter had signature blocks for both Richmond Dairy Associates, L.P., and Multi-Housing, reflecting the parties' understanding that both of them needed to endorse the engagement letter.

By letter dated January 28, 2020, Multi-Housing informed Alexander Dairy that it would not agree to this engagement letter because it included two appraisers, one of whom (Nimey) lacked the qualifications delineated in Paragraph 16.1(C)(i) of the Limited Partnership Agreement. Multi-Housing said it "[was] prepared to agree to an appraisal of the Partnership's improved real property [as opposed to a valuation analysis], in accordance with the Partnership Agreement, conducted solely by Andrew Lines, MAI, also of CohnReznick." (Def.'s Ex. 25.) Multi-Housing also offered "to come to agreement with [Alexander Dairy] on appropriate valuation instructions to be delivered to Mr. Lines." (*Id.*) Multi-Housing cautioned Alexander Dairy that moving "forward unilaterally with the" CohnReznick proposal would violate "the Partnership Agreement, which requires that the partners agree on the selected appraiser." (*Id.*)

Three days later, Alexander Dairy sent Multi-Housing a revised engagement letter signed by McGarr and Lines. Like the first engagement letter, the revised engagement letter called for a valuation analysis and an appraisal of "the 'as-is' fair market value of the fee simple interest of the

5

real property owned and operated" by the Limited Partnership. (Def.'s Ex. 26.) Like the original engagement letter, the revised engagement letter had signature blocks for both Richmond Dairy Associates, L.P., and Multi-Housing.

Multi-Housing refused to agree to the revised engagement letter because it "appear[ed] to be identical to" the first engagement letter, "containing the same terms and conditions [Multi-Housing] previously objected to, other than substituting Mr. Lines for Donald Nimey as one of the two CohnReznick appraisers." (Def.'s Ex. 27.) Multi-Housing complained that the revised engagement letter

> identifies the same scope of services as the [first] engagement letter, despite our objections as most recently stated in [Multi-Housing's] letter of January 28, 2020—namely that the appraisal is to be an appraisal of real property only, conducted by one MAI appraiser, from which the partners can thereby determine the value of the limited partner interests in accordance with the Partnership Agreement.

(*Id.*) Multi-Housing also expressed concern that, based on a conversation with Lines, "Mr. Nimey and/or other non-members of the Appraisal Institute would continue to be involved in the appraisal process and CohnReznick would also complete an appraisal of the limited partner interests using techniques and methodology that is not utilized in a MAI appraisal." (*Id.*) Multi-Housing reiterated that it "previously agreed to use the scope of work, special conditions, and definition of value in the" Knight appraisal. (*Id.*)

On February 12, 2020, despite Multi-Housing's objections, Alexander Dairy decided to have CohnReznick proceed with the appraisal required by the Limited Partnership Agreement *without having Multi-Housing sign the engagement letter.*[5] Multi-Housing reiterated its

---

[5] In stark contrast to his position when discussing engaging Novogradac, Steven Alexander told a CohnReznick manager that "[w]e don't need [Jeff Sussman's] signature [on the engagement letter] to move forward. We were doing it as a courtesy to him." (Pl.'s Ex. 30.) (Sussman is senior vice president and general counsel of Highridge Costa. A subsidiary of Highridge Costa is the general partner in a limited partnership of which Multi-Housing is a limited partner.)

6

disagreement with this a week later. On March 6, 2020, Alexander Dairy sent Multi-Housing an amended appraisal report from CohnReznick that valued Multi-Housing's interest in the Limited Partnership at $669,000.[6] Nevertheless, Alexander Dairy offered to pay $675,000 for Multi-Housing's interest in the Limited Partnership in accordance with CohnReznick's original valuation of Multi-Housing's interest in the Limited Partnership.

### D. *Alexander Dairy Attempts to Close on the Sale of Multi-Housing's Partnership Interest*

On March 5, 2020, Alexander Dairy told Multi-Housing that it "is prepared to close on March 16, 2020, and to deliver at closing the purchase price of $675,000 in immediately available funds." (Pl.'s Ex. 63.) Alexander Dairy also shared drafts of two documents required at closing: an assignment of Multi-Housing's rights, title, and interest and a post-transfer indemnification agreement. On March 11, 2020, Multi-Housing informed Alexander Dairy that it would not close on March 16. The next day, despite Multi-Housing's explicit refusal to close on March 16, 2020, Alexander Dairy told Multi-Housing that it would proceed with its plan to close on the sale of Multi-Housing's interest in the Limited Partnership by sending a representative to Multi-Housing's California office with the required closing documents. If Multi-Housing "refuse[d] to close . . . then Alexander Dairy [would] forward the applicable check" to Multi-Housing "and treat the transaction as fully closed." (Pl.'s Ex. 67.) On March 13, 2020, Multi-Housing reiterated that it would not close on the sale of its partnership interest or accept any funds that purported to represent the purchase price for its partnership interest.

Undeterred by these warnings, Steven Alexander flew to California and went to Multi-Housing's offices on March 16, 2020, for the "closing," but Multi-Housing refused to meet with

---

[6] CohnReznick originally valued Multi-Housing's interest in the Limited Partnership at $675,000.

7

him. Two days later, Alexander Dairy sent a letter to Multi-Housing with a check for the purported purchase price, a post-transfer indemnification agreement, and an assignment of Multi-Housing's interest in the Limited Partnership.[7] Multi-Housing's attorney refused delivery of the letter and enclosures. Nonetheless, Alexander Dairy claimed to have exercised the Purchase Option and, therefore, "consider[ed] the transaction *closed.*" (Pl.'s Ex. 70.)

### E. Alexander Dairy's Post-"Closing" Behavior

After the "closing," Alexander Dairy refused to deliver certain operations reports from 2020 (the "operations reports") as required by the Limited Partnership Agreement. (*See* Pl.'s Ex. 1 ¶¶ 5.1(X), 9.3(B).) In addition, after the "closing," Steven Alexander—believing that he had acquired Multi-Housing's interest in the Limited Partnership and "could do whatever we wanted to do with" the Richmond Dairy "at that point"—contacted the Virginia Housing Development Authority ("VHDA") about refinancing the Richmond Dairy and "limit[ing] the number of tax credit units" under Alexander Dairy's control "when [it] get[s] control of" the Richmond Dairy. (Trial Tr. 367:19; 369:12-13, 20-22.) Steven Alexander also discussed financing options for the Richmond Dairy with Berkadia, a large lending institution. Alexander Dairy did not disclose these discussions with Multi-Housing.

## II. LEGAL CONCLUSIONS

### A. Breach of Contract for Unauthorized Valuation of the Partnership Interest (Count I)

Multi-Housing alleges that Alexander Dairy breached the Limited Partnership Agreement in part because Multi-Housing did not agree to the CohnReznick appraisal.[8] "The elements of a

---

[7] Alexander Dairy also sent Multi-Housing's attorney PDF images of the letter and enclosures.

[8] Multi-Housing alleges that Alexander Dairy breached the Limited Partnership Agreement in many other ways. Because the Court finds that that Multi-Housing did not agree to the

8

breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

The Court finds that the Limited Partnership Agreement is a valid contract that caused Alexander Dairy to have legally enforceable obligations to Multi-Housing. These obligations included the requirement that Alexander Dairy not exercise the Purchase Option unless both parties agreed on the appraiser whose appraisal would set the purchase price for Multi-Housing's interest in the Limited Partnership. Alexander Dairy breached that obligation by purporting to exercise the Purchase Option even though Multi-Housing did not agree to the CohnReznick appraisal performed by Andrew Lines. Despite Alexander Dairy's contention to the contrary, Multi-Housing did not agree to the CohnReznick appraisal merely by identifying CohnReznick as an acceptable appraisal company and Lines as an acceptable appraiser. Indeed, Multi-Housing repeatedly said that it *did not agree* to the CohnReznick appraisal for several reasons. Moreover, when discussing engaging Novogradac, both Alexander Dairy and Multi-Housing recognized that formal engagement of an appraiser only happened after *both* parties signed the engagement letter. Alexander Dairy's about-face on this position amounts to nothing more than manifest opportunism.

Although Multi-Housing satisfied the first two elements of its breach of contract claim, it failed to offer evidence that Alexander Dairy's breach caused any injury or damage. But that failure does not mandate the failure of Multi-Housing's entire claim. "In Virginia, when no

---

CohnReznick appraisal, it will not address the other ways in which Multi-Housing says Alexander Dairy breached the Limited Partnership Agreement.

evidence is given of any particular amount of loss, the law declares the right by awarding what it terms nominal damages." *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 159, 818 S.E.2d 779, 785 (2018) (cleaned up) (quoting *News Leader Co. v. Kocen*, 173 Va. 95, 107-08 3 S.E.2d 385, 390 (1939)).[9] The Court, therefore, will enter judgment for Multi-Housing on Count I and award it $1 in nominal damages.

### B. Breach of Contract for Violating the Closing Conditions (Count II)

Multi-Housing contends that Alexander Dairy breached the Limited Partnership Agreement by violating the conditions for closing on the Purchase Option. The Limited Partnership Agreement allowed Alexander Dairy to exercise the Purchase Option and close on the sale of Multi-Housing's interest in the Limited Partnership only if it "[was] not . . . in default under the terms of" the Limited Partnership Agreement. (Pl.'s Ex. 1 ¶ 16.1.)[10] As stated above, Alexander Dairy did not obtain Multi-Housing's agreement on the CohnReznick appraisal before attempting to exercise the Purchase Option as required by the Limited Partnership Agreement. Thus, Alexander Dairy "default[ed] under the terms of" the Limited Partnership Agreement, which prevented it from closing on the sale of Multi-Housing's interest in the Limited Partnership. (*Id.* ¶ 16.1) In addition, Alexander Dairy acted as if it closed on Multi-Housing's interest in the Limited Partnership, even though it never received an executed assignment of Multi-Housing's rights, title,

---

[9] *See also id.* at 159-60, 818 S.E.2d at 785-86 ("Nominal damages are 'appropriate when there is a legal right to be vindicated against an invasion that has produced no actual, present loss of any kind or where, from the nature of the case, some injury has been done but the proof fails to show the amount.'" (quoting *Town & Country Props., Inc. v. Riggins*, 249 Va. 387, 399, 457 S.E.2d 356, 399 (1995))).

[10] The Limited Partnership Agreement defines default as breach of the Limited Partnership Agreement. (*Id.* art. I ("'Event of Default' means any breach or default of any covenants, agreements, representations, or warranties of the General Partner . . . in this Agreement . . . .").)

and interest in the Limited Partnership as required by Article XVI Paragraph 16.1(E) of the Limited Partnership Agreement.

For these reasons, Multi-Housing proved the first two elements of its breach of contract claim. But, once again, it has not offered evidence of the injury or damages caused by the breach. The Court, therefore, will enter judgment for Multi-Housing on Count II, but it will award it only nominal damages of $1.

### C. Breach of Fiduciary Duties (Count III)

Multi-Housing claims that Alexander Dairy breached the fiduciary duties it owes to Multi-Housing by, among other things, "unilaterally acting to usurp [Multi-Housing's] interests in the Limited Partnership." (ECF No. 20-1 ¶ 103.) To succeed on a breach of fiduciary duty claim under Virginia law, Multi-Housing must establish "(1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1016 (E.D. Va. 2018) (quoting *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011)).

Under the Virginia Uniform Partnership Act ("VUPA"),[11] Alexander Dairy owes Multi-Housing duties of loyalty and care. Va. Code § 50-73.102(A). It also has an obligation of good faith and fair dealing. *See id.* § 50-73.102(D). These duties arise independent from the Limited

---

[11] The provisions of the VUPA apply here because, under the Virginia Revised Uniform Limited Partnership Act, "[e]xcept as provided in this chapter, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to persons other than the partnership and the other partners." Va. Code § 50-73.29(B); *see also Dulles Corner Props. II Ltd. P'ship v. Smith*, 246 Va. 153, 156, 431 S.E.2d 309, 311 (1993) (citing Va. Code § 50-73.29 for the proposition that typically "a general partner of a limited partnership has the same rights, powers, and liabilities as a partner in a partnership not having limited partners" and holding that "these provisions of the Virginia Revised Uniform Limited Partnership Act, Code §§ 50-73.1 to 73.77, manifest a clear legislative intent to provide general partners of a limited partnership no more rights against each other than those of any partner in a partnership formed pursuant to common law and the" VUPA).

11

Partnership Agreement. *See Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*, No. 7:11cv25, 2012 WL 1598130, at *4 (W.D. Va. May 4, 2012) ("Fiduciary duties owed by one partner to other partners are common law duties and thus independent from duties that may be imposed under the Partnership Agreement.").

Here, Multi-Housing's breach of fiduciary duties claim succeeds because it prevailed on its breach of contract claims and has proven the existence of the Limited Partnership.[12] Even if this alone did not entitled Multi-Housing to judgment on Count III, the Court would still find that Alexander Dairy breached the fiduciary duties it owed Multi-Housing. For example, Alexander Dairy breached its duties of loyalty and care and its obligation of good faith and fair dealing by pretending that it had closed on Multi-Housing's interest in the Limited Partnership when it had plainly not satisfied the prerequisites for closing.

Alexander Dairy also breached the duties it owed Multi-Housing by exploring the financial restructuring of the Richmond Dairy based on its incorrect belief that it has successfully closed on Multi-Housing's interest in the Limited Partnership. To make matters worse, Alexander Dairy did not disclose these discussions to Multi-Housing. *Klotz v. Klotz*, 202 Va. 393, 400, 117 S.E.2d 650, 656 (1961) (noting that a partner "should guard the interests of the other equally with his own and make a frank and fair disclosure of all material facts").

Moreover, Alexander Dairy attempted to justify its refusal to share the operations reports by maintaining its obviously disputed position that it had purchased Multi-Housing's interest in the Limited Partnership. Alexander Dairy obstinately adhered to this meritless position, forcing

---

[12] *See Khader v. Hadi Enters.*, No. 1:10cv1048, 2010 WL 5300876, at *5 (E.D. Va. Dec. 22, 2010) ("Fiduciary duties create a higher duty of care between parties than do contractual duties. It follows logically, then, that one who states a claim for breach of contract and pleads the existence of a partnership has sufficiently pleaded a breach of fiduciary duty.").

Multi-Housing to seek a court order compelling production of the operations reports. This violated the fiduciary duties Alexander Dairy owed Multi-Housing. *Klotz*, 202 Va. at 400, 117 S.E.2d at 656.[13] Accordingly, Multi-Housing proved the first two elements of its breach of fiduciary duties claim.

But, yet again, Multi-Housing did not provide evidence of damages resulting from the breach. The Court, therefore, will enter judgment for Multi-Housing on Count III and award $1 in nominal damages.

### D. Declaratory Judgment (Count IV) & Quiet Title (Count VI)

Multi-Housing seeks a declaratory judgment that, among other things, Alexander Dairy "has not complied with the Purchase Option and thus has not effectuated the purchase of the Limited Partner's interests in the Limited Partnership"; "the CohnReznick appraisal is not a valid appraisal under the Limited Partnership Agreement for use in determining the fair market value of the Limited Partner's interests"; and "the Purchase Option cannot be consummated unless and until a valid appraisal is obtained." (ECF No. 20-1 ¶ 110.) It also seeks an order quieting title to its interest in the Limited Partnership.

Section 2201(a) of Title 28 of the United States Code permits federal courts to "declare the rights and other legal relations" of parties. Courts should grant declaratory judgments (1) "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... [(2)] when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)).

---

[13] *Cf. Greenfeld v. Stitely*, No. 2004-191516, 2007 WL 420129 (Va. Cir. Ct. Jan. 5, 2007) (finding a breach of fiduciary duties when two partners, among other things, prevented another partner from accessing the partnership's computer network).

"[I]n a quiet title action, a plaintiff asks the court to declare that he has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it." *Maine v. Adams*, 277 Va. 230, 238, 672 S.E.2d 862, 866 (2009). "A plaintiff asserting a quiet title claim must allege and prove that it has superior legal or equitable title." *Pei P'ship Architects, LLP v. Celebrate Va. S., LLC*, No. 3:13-cv-48, 2013 WL 1163463, at *4 (E.D. Va. Mar. 19, 2013).

Both the declaratory judgment and order quieting title sought by Multi-Housing aim to resolve uncertainty about the owner of Multi-Housing's interest in the Limited Partnership. For the reasons stated in Part II.A and B, the Court finds that Alexander Dairy has not exercised the Purchase Option and closed on Multi-Housing's interest in the Limited Partnership. Thus, Multi-Housing has superior title to its interest in the Limited Partnership. In addition, the deadline for Alexander Dairy to close on the Purchase Option has passed.

The Court will issue a declaratory judgment stating (1) Multi-Housing's superior title to its interest in the Limited Partnership and (2) the expiration of the deadline for Alexander Dairy to close on the Purchase Option. Because the declaratory judgment will grant Multi-Housing the relief it seeks from an order quieting title, the Court will not enter an order quieting title.

### E. Breach of Contract for Failing to Provide Operations Reports (Count VII)

Multi-Housing alleges that Alexander Dairy breached the Limited Partnership Agreement by failing to provide operations reports as required by the Limited Partnership Agreement. Alexander Dairy violated the Limited Partnership Agreement by not delivering the operations reports until ordered to do so by this Court. But because Multi-Housing has not established damages stemming from this breach, the Court will award only $1 in nominal damages on Count VII.

## F. Breach of Contract for Obstructing Alexander Dairy's Exercise of the Purchase Option (Counterclaim)

Alexander Dairy asserts a counterclaim against Multi-Housing, alleging that Multi-Housing's failure to successfully exercise the Purchase Option "is solely due to the interference and non-cooperation of Multi-Housing Partners." (ECF No. 7, at 19.) Essentially, Alexander Dairy's claim rests on its contention that Multi-Housing unreasonably withheld its assent to the CohnReznick appraisal. In other words, Alexander Dairy believes that Multi-Housing acted in bad faith.[14]

In this case, the evidence does not support finding that Multi-Housing acted in bad faith. *See id.*[15] Multi-Housing reasonably rejected both the Knight and original CohnReznick appraisals because neither complied with the requirement that "a member of the Appraisal Institute with note

---

[14] The parties couch their discussion of this issue in terms of commercial reasonableness. (*See* ECF No. 108, at 12-13; ECF No. 109, at 4.) But they have not explained why a commercial reasonableness standard applies here. It appears, therefore, that Alexander Dairy bases its argument on the duty implicit in every contract to act in good faith. *See A&E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986) (applying Virginia law and observing that "[a]ll contracting parties owe to each other a duty of good faith in the performance of the agreement"); *Goodrich Corp. v. BaySys Techs., LLC*, 873 F. Supp. 2d 736, 742 (E.D. Va. 2012) ("Under Virginia law, every contract contains an implied covenant of good faith and fair dealing."); *Aronhime v. Levinson*, 119 Va. 394, 398, 89 S.E. 893, 894 (1916) ("In every transaction lawful in itself, the law supports a presumption of honesty and good faith." (quoting *Farrington v. Harrison*, 15 A. 8, 9 (N.J. 1888))); *Klein v. Klein*, 2003 WL 22843551, at *10 (Va. Ct. App. 2003) ("[O]ur case law . . . impose[s] an implied duty of good faith on contracts between private parties."); Second (Restatement) of Contracts § 205 (Am. L. Inst. 1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). In any event, the duty to act in good faith certainly requires a party to act in a commercially reasonable manner. *Cf.* Restatement (Second) of Contracts § 205 cmt. d (noting that courts have recognized "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance" as examples of acting in bad faith).

[15] The Supreme Court of Virginia regularly looks to the Restatement (Second) of Contracts for guidance on contract law. *See, e.g., Rastek Constr. & Dev. Corp. v. Gen. Land Com. Real Est. Co., LLC*, 294 Va. 416, 425-26 806 S.E.2d 740, 745 (2017); *Bennett v. Sage Payment Sols., Inc.*, 282 Va. 49, 57, 71 S.E.2d 736, 741 (2011).

15

[sic] less than ten years [of] experience appraising low income housing projects" perform the appraisal required under the Purchase Option. (Pl.'s Ex. 1 ¶ 16.1(C).) Multi-Housing then proposed three alternative appraisers to whom they would agree, which evinces its willingness to negotiate in good faith with Alexander Dairy about exercising the Purchase Option.

In addition, Multi-Housing thought the selected appraiser should use "[t]he scope of work, special conditions, and definition of value listed in Knight's agreement." (Pl.'s Ex. 17.) Alexander Dairy originally proposed this scope of work. It makes no sense to find that Multi-Housing acted in bad faith by advocating for a scope of work *originally proposed by Alexander Dairy*.

If anything, Alexander Dairy acted in bad faith by changing its mind about whether both parties needed to sign the engagement letter with CohnReznick and holding itself out as having closed on Multi-Housing's interest in the Limited Partnership when it plainly had not done so.

The Court, therefore, finds that Multi-Housing did not act in bad faith and interfere with Alexander Dairy's attempt to exercise the Purchase Option. The parties undoubtedly looked to maximize their own profit. But that is business, not the makings of a breach of contract claim. Accordingly, Alexander Dairy's counterclaim fails.

### G. Costs and Attorneys' Fees

Multi-Housing asks the Court to use its equitable powers to award it costs and attorneys' fees. "Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4-5 (1973). Federal courts may "exercise this inherent equitable power whenever 'overriding considerations indicate the need for such a recovery.'" *Id.* at 5 (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). For example, a court could exercise this equitable

power if a defendant's conduct "demonstrated a level of egregiousness comparable to constructive or intentional fraud." *Bocek v. JGA Assocs., LLC*, No. 1:11cv546, 2016 WL 1161401, at *14 (E.D. Va. Mar. 23, 2016).

Both before and during this litigation, Alexander Dairy acted as if it had already purchased Multi-Housing's interest in the Limited Partnership, when Multi-Housing *obviously* disputed that proposition. Its obdurate adherence to that position, especially as "justification" for withholding the operations reports from Multi-Housing, reflects poorly on Alexander Dairy. But, despite this demonstrated recalcitrant attitude, the Court does not find that Alexander Dairy's conduct reached "a level of egregiousness comparable to constructive or intentional fraud." *Id.* As such, "the interests of justice" do not require the award of costs and attorneys' fees in this case, *Hall*, 412 U.S. at 5, and the Court declines to exercise its inherent authority to make such an award.

### III. CONCLUSION

For the foregoing reasons, the Court will enter judgment for Multi-Housing on all counts and award a total of $4 in nominal damages ($1 each for Counts I-III and VII). The Court will also issue a declaratory judgment that states (1) Multi-Housing's superior title to its interest in the Limited Partnership and (2) the expiration of the deadline for Alexander Dairy to close on the Purchase Option. The Court will order each party to pay its own costs and attorneys' fees.

As required by Rule 52(a)(1) and Rule 58, the Court will issue a separate Order that sets out its judgment.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 1 July 2021
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge